[No. 35694. En Banc. June 20, 1963.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM F. CORY, *Appellant.**

*Frederick B. Cohen,* for appellant.

*James Munro,* for respondent.

*Kenneth MacDonald, Maurice E. Sutton,* and *Marjorie D. Rombauer,* amici curiae.

ROSELLINI, J.—The defendant was arrested in Bremerton on March 8, 1960, on a charge of lewdness, and incarcerated in the Kitsap County jail in Port Orchard. On March 9,

* Reported in 382 P. (2d) 1019.

he was charged with second-degree burglary and larceny. Various amended informations followed until at last he was tried on 12 counts of burglary and larceny. The jury found him guilty on five of these counts, and he has appealed, assigning numerous errors in the conduct of the trial.

We find it necessary to discuss only one of these assignments of error, inasmuch as our decision in regard to it disposes of the case. This is a contention that the court erred in denying the defendant's motions to dismiss the case, grounded upon his assertion that he was denied the full enjoyment of his right to counsel when sheriff's officers eavesdropped on his conversations with his attorney.

The record shows that the defendant, being unable to post bail, remained in the county jail from the time of his arrest throughout the trial and thereafter. A room was provided in the jail for consultations between prisoners and their attorneys. After the defendant had consulted with his attorney several times, he discovered that these conversations were being eavesdropped upon through a microphone installed in the conference room. When this matter was reported to the trial court, it conducted an investigation and discovered that the conference room did contain a microphone and that the conversations were listened to by the sheriff and his officers. At first they contended that only one tape was made of conversations, but later produced a second tape. The trial court ordered that these tapes be played for the defendant and his counsel, and also directed that the prosecutor might hear the recordings.

The trial judge refused to dismiss the case but did indicate that he would exclude any evidence derived through the eavesdropping, on motion of the defendant. It is the defendant's contention that the excluding of evidence which he could show was obtained by reason of information gleaned through the eavesdropping was not sufficient to dispel the harm done by the officers, and that this activity vitiated the entire proceeding.

The right of counsel is protected by the fifth[1] and sixth amendments of the Constitution of the United States and by amendment 10, Art. 1, § 22, of the state constitution, which provides, *inter alia*, "In criminal prosecutions, the accused shall have the right to appear and defend in person, or by counsel, . . ."

In interpreting this provision, in *In re Wilken v. Squier,* 50 Wn. (2d) 58, 309 P. (2d) 746, we said:

"Under amendment 6 of the Federal constitution and amendment 10 of our state constitution, a denial of aid of counsel to one pleading guilty to a serious crime is a violation of his constitutional right. . . ."

In the case of *State v. Hartwig,* 36 Wn. (2d) 598, 219 P. (2d) 564, where the court had appointed counsel for the indigent defendant but had allowed him only a few hours in which to consult with the attorney and prepare his defense, we held that the defendant had been denied his constitutional right to counsel, saying,

"When the court recognized the constitutional right of appellant to have counsel and appointed an attorney to represent him, it then became the duty of the court to allow the appointed attorney a reasonable time within which to consult his client and make adequate preparation for trial. The constitutional right to have the assistance of counsel, Art. I, § 22, carries with it a reasonable time for consultation and preparation, and a denial is more than a mere abuse of discretion; it is a denial of due process of law in contravention of Art. I, § 3 of our constitution. . . .

"Although it may have been made to appear to the court that the issues of fact and law were comparatively simple, and hence a continuance was not needed, nevertheless it was the duty of appointed counsel to make a full and complete investigation of both the facts and the law in order to advise his client and prepare adequately and efficiently to present any defenses he might have to the charges against him. No sufficient time was allowed for such purposes."

While our research and that of diligent counsel and amicus curiae have not disclosed a Washington case which

---

[1] *Neufield v. United States,* 118 F. (2d) 375, 383.

speaks of the right of a defendant to confer with his counsel in private, it is universally accepted that effective representation cannot be had without such privacy. The cases are annotated in 23 A.L.R. 1382 and 54 A.L.R. 1225, and numerous citations are listed in the supplements to these annotations.

It is also obvious that an attorney cannot make a "full and complete investigation of both the facts and the law" unless he has the full and complete confidence of his client, and such confidence cannot exist if the client cannot have the assurance that his disclosures to his counsel are strictly confidential.

In the case of *Fusco v. Moses,* 304 N. Y. 424, 107 N. E. (2d) 581, where an informer had ingratiated himself with other employees charged with neglect of duty and had attended their conferences with their attorney, the court held that the employees were deprived of their full right to be represented by counsel, and the determination of the administrative body hearing the charges against them was annulled, with the result that they were reinstated in their jobs.

Another case involving an informer is *Caldwell v. United States,* 205 F. (2d) 879. There the informer had won the confidence of the defendants and they had solicited him to negotiate the theft of certain files involved in their case. Because he attended their conferences with their attorneys, the court held that they had been deprived of their constitutional right to effective assistance of counsel. The court said:

"We do not mean to deny the right—indeed the duty—of prosecuting officials to seek to uncover, prosecute and punish resort by accused persons and their counsel to theft of files or other unlawful means of defense. We recognize that the prosecutor in this case was faced with a real dilemma, once the possibility of a theft of the files had been reported by Bradley. We do not question that he then acted with what must have seemed high motives, and certainly with active diligence. But high motives and zeal for law enforcement cannot justify spying upon and intrusion into the relationship between a person accused

of crime and his counsel. The Constitution's prohibitions against unreasonable searches, and its guarantees of due process of law and effective representation by counsel, lose most of their substance if the Government can with impunity place a secret agent in a lawyer's office to inspect the confidential papers of the defendant and his advisers, to listen to their conversations, and to participate in their counsels of defense. Conduct of that sort on the part of our Government is no doubt extremely rare. But if it does occur a conviction tainted by it cannot stand. Appellant's motion for a new trial should have been granted."

The court in that case cited and followed *Coplon v. United States,* 191 F. (2d) 749 (cert. den. 342 U. S. 926, 96 L. Ed. 690, 72 S. Ct. 363), the case most nearly in point, since it involved the interception of telephone conversations between the defendant and her attorney through wiretapping. Federal agents investigating possible espionage activities on the part of the defendant resorted to this device to secure information. The trial court denied a motion for a new trial on the ground that the defendant had not shown that the agents procured evidence by this means which was used to obtain her conviction. In reversing this order, the court of appeals, after citing many cases upholding the right of a defendant to conduct his consultations with counsel in private, said:

" . . . The prosecution is not entitled to have a representative present to hear the conversations of accused and counsel. We consider it equally true that a defendant and his lawyer have a right to talk together by telephone without their conversations being monitored by the prosecution through a secret mechanical device which they do not know is being used. It would not be an answer to say that the accused cannot complain of the interception of his telephone conversations with his counsel if he had on other occasions ample personal consultation with his lawyer, face to face, which no person overheard. That fact would not erase the blot of unconstitutionality from the act of intercepting other consultations.

" . . .

"We think the District Court erred in holding that the interception of telephone messages between appellant and her counsel before and during her trial, if it occurred, was

nothing more than a serious breach of ethics unless such interception yielded evidence which was introduced against her. It is true, as the court pointed out, that § 605 of the Communications Act, as construed by the Supreme Court, does not make wiretapping an offense but does condemn as criminal the interception and disclosure of the contents of the message, both acts being essential to complete the offense. But that is not analogous to the Fifth and Sixth Amendments, which unqualifiedly guard the right to assistance of counsel, without making the vindication of the right depend upon whether its denial resulted in demonstrable prejudice. The Supreme Court said in Glasser v. United States, 1942, 315 U. S. 60., 76, 62 S. Ct. 457, 467, 86 L. Ed. 680: ' * * * The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.'

"We think it is further true that the right to have the assistance of counsel is so fundamental and absolute that its denial invalidates the trial at which it occurred and requires a verdict of guilty therein to be set aside, regardless of whether prejudice was shown to have resulted from the denial. . . .

" . . .

"A defendant in a criminal case may not legally be found guilty except in a trial in which his constitutional rights are scrupulously observed. No conviction can stand, no matter how overwhelming the evidence of guilt, if the accused is denied the effective assistance of counsel, or any other element of due process of law without which he cannot be deprived of life or liberty."[2]

We recognize the undoubted validity of the constitutional principles expressed in this opinion, and the others cited, and the conclusion expressed, that no conviction can stand, no matter how overwhelming the evidence of guilt, if the accused is denied the effective assistance of counsel. We do not think, however, that the granting of a new trial is an adequate remedy for the deprivation of the right to counsel where eavesdropping has occurred. So far as the opinion in the *Coplon* case reveals, the defendant did not ask that the case be dismissed, but merely

[2]This case received favorable reviews in law journals. See 21 Fordham L. Rev. 175-78 (1952) and 7 Wyoming L. J. 44-47 (1952).

urged that she be granted a new trial. In the *Caldwell* case, a footnote indicates that the opinion of the court was that a dismissal would not be proper unless the defendant could show that the invasion of his right to private consultation was so prejudicial that a subsequent trial necessarily would be unfair. In effect, the court in that case said that it was not necessary for the defendant to show that he had been prejudiced in the first trial, in order to secure a second trial, but that it would be necessary to show that he would also be prejudiced in a second trial, in order to secure a dismissal.

██ We do not appreciate the logic of this conclusion. There is no way to isolate the prejudice resulting from an eavesdropping activity, such as this. If the prosecution gained information which aided it in the preparation of its case,[3] that information would be as available in the second trial as in the first. If the defendant's right to private consultation has been interfered with once, that interference is as applicable to a second trial as to the first. And if the investigating officers and the prosecution know that the most severe consequence which can follow from their violation of one of the most valuable rights of a defendant, is that they will have to try the case twice, it can hardly be supposed that they will be seriously deterred from indulging in this very simple and convenient method of obtaining evidence and knowledge of the defendant's trial strategy.

Not only was the conduct of the sheriff's office in violation of the constitutional provision assuring the right to counsel, but also of the statutory law, RCW 5.60.060(2), which establishes that communication between an attorney and his client shall be privileged and confidential.

---

[3]In this case we must assume that information gained by the sheriff was transmitted to the prosecutor, since the opportunity and the motive were there and the defendant has no way of knowing what was communicated to the prosecutor. It is known that, at the least, he listened to two tapes.

It should be noted that the prosecutor who appeared in the Supreme Court was not the prosecutor at the time the events in this opinion occurred.

In *People v. Cahan*, 44 Cal. (2d) 434, 445, 282 P. (2d) 905, 50 A.L.R. (2d) 513 (1955), Judge Roger J. Traynor in explaining the reason that the court abandoned the rule that evidence illegally obtained was admissible and adopted the exclusionary rule, said:

" . . . We have been compelled to reach that conclusion because other remedies have completely failed to secure compliance with the constitutional provisions on the part of police officers with the attendant result that the courts under the old rule have been constantly required to participate in, and in effect condone, the lawless activities of law enforcement officers.

" . . . Out of regard for its own dignity as an agency of justice and custodian of liberty the court should not have a hand in such 'dirty business.' (See *MacNabb v. United States,* 318 U. S. 332, 345 [63 S. Ct. 608, 87 L. Ed. 819].) Courts refuse their aid in civil cases to prevent the consummation of illegal schemes of private litigants (*Lee On v. Long,* 37 Cal. 2d 499, 502-503 [234 P. 2d 9], and cases cited); *a fortiori,* they should not extend that aid and thereby permit the consummation of illegal schemes of the state itself. (See Roberts, J., concurring in *Sorells v. United States,* 287 U. S. 435, 453 [53 S. Ct. 210, 77 L. Ed. 413, 86 A.L.R. 249].) It is morally incongruous for the state to flout constitutional rights and at the same time demand that its citizens observe the law. . . ."

This concept of how the judiciary should react to violation of constitutional rights, appeals to us.

We think that the court in *Fusco v. Moses, supra,* made the only disposition of the case which would afford an adequate remedy to the defendants and effectively discourage the odious practice of eavesdropping on privileged communication between attorney and client. There, the court ordered that the charges against the defendants should be dismissed and that they should be reinstated in their jobs.

It is our conclusion that the defendant is correct when he says that the shocking and unpardonable conduct of the sheriff's officers, in eavesdropping upon the private consultations between the defendant and his attorney, and thus depriving him of his right to effective counsel, vitiates the whole proceeding. The judgment and sentence must be set aside and the charges dismissed.

It is so ordered.

OTT, C. J., DONWORTH, WEAVER, HUNTER, HAMILTON, and HALE, JJ., concur.

HILL and FINLEY, JJ., concur in the result.