448 P.2d 229

**STATE of Idaho, Plaintiff-Respondent,**

v.

**James B. POLSON, Defendant-Appellant.**

**No. 9944.**

Supreme Court of Idaho.

Dec. 9, 1968.

Rehearing Denied Jan. 3, 1969.

48. 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954).

616

Derr, Derr & Walters, Boise, for defendant-appellant.

Allan G. Shepard, Atty. Gen., and Roger B. Wright, Deputy Atty. Gen., Boise, Jack G. Voshell, Pros. Atty., Idaho Falls, for plaintiff-respondent.

TAYLOR, Justice.

James B. Polson was convicted and adjudged guilty of assault with intent to murder, a felony,[1] and of being a persistent violator.[2] He was sentenced to a term of 14 years imprisonment in the penitentiary for the crime of assault with intent to murder, and to an additional 10 years on his conviction of recidivism. The charge arose out of a shooting incident which occurred at a bar in Idaho Falls on the morning of May 2, 1966. Defendant was in the bar in company with one Joe Dunn. The complaining witness Carl Holm was in the bar in company with one Don Fedder. All were long-standing acquaintances, but apparently there was "bad blood" between defendant and Holm. The bartender was the only other eyewitness to the gunplay. Holm and defendant both carried hand guns from which they exchanged shots at each other. During the exchange Fedder and defendant were wounded. There was competent evidence, though conflicting, to indicate that defendant drew his gun and fired before Holm retaliated. There was also evidence indicating that defendant instigated the fight, seeking to revenge a beating he had suffered a day or two earlier at the hands of Holm.

By his first assignment of error defendant urged that the court erred in entering a judgment of conviction upon the verdict of the jury finding him guilty of "assault with intent to commit murder." Defendant's contention is that the crime of which he was found guilty was not charged in the information. The information designates the crime charged as "Assault With a Deadly Weapon With Intent to Murder." The information then sets out the commission of the crime as follows:

"That the said defendant, James B. Polson, then and there being, did then and there wilfully, unlawfully, feloniously and with malice aforethought, by means of a certain deadly weapon, that is a loaded revolver, which he, the said defendant in his hands then and there held, did make an assault upon the person of one Carl Holm, a human being, by shooting said loaded pistol at the person of said Carl Holm, he being within range of the said pistol, with the intent then and there to wilfully, unlawfully, intentionally and feloniously and with malice aforethought, kill and murder the same Carl Holm, which assault was likely to and could have produced great, severe and mortal injury to the said Carl Holm."

Assault with a deadly weapon is defined in I.C. § 18–906.[3]

Our statute requires that an information contain:

"2. A statement of the acts constituting the offense in ordinary and concise

---

1. "Every person who assaults another with intent to commit murder, is punishable by imprisonment in the state prison not less than one nor more than fourteen years." I.C. § 18–4015.

2. "Any person convicted for the third time of the commission of a felony, whether the previous convictions were had within the state of Idaho or were had outside the state of Idaho, shall be considered a persistent violator of law, and on such third conviction shall be sentenced to imprisonment in the state penitentiary for not less than five years and said imprisonment may extend to life." I.C. § 19–2514.

3. "Every person who commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, is punishable by imprisonment in the state prison not exceeding two years, or by fine not exceeding $5000, or by both." I.C. § 18–906.

language, and in such manner as to enable a person of common understanding to know what is intended." I.C. § 19–1409. See I.C. §§ 19–1303, 19–1304, 19–1411.

■ It is proper, and in some cases necessary, to set out in the information the means by, and the manner in, which a crime is committed. State v. McMahan, 57 Idaho 240, 65 P.2d 156 (1937). The information in this case properly charges both the crime of assault with intent to murder and the included offense of assault with a deadly weapon. State v. Missenberger, 86 Idaho 321, 386 P.2d 559 (1963); cf. I.C. § 19–2312. The fact that the information did not separately name the two offenses in no way prejudiced defendant. State v. Davidson, 78 Idaho 553, 309 P.2d 211 (1957); State v. Farnsworth, 51 Idaho 768, 10 P.2d 295 (1932); State v. Holder, 49 Idaho 514, 290 P. 387 (1930); State v. Altwatter, 29 Idaho 107, 157 P. 256 (1916); State v. Curtis, 29 Idaho 724, at 730, 731, 161 P. 578 (1916); I.C. § 19–1419; see also I.C. § 19–1418.

Defendant contends that the trial court erred in permitting the state to call Carl Holm as a witness and, in the presence of the jury, extract from him a refusal to testify on the ground that his testimony would tend to incriminate him; also the action of the court in permitting the prosecuting attorney, in the presence of the jury, to grant immunity to the witness Holm in exchange for his waiver of his privilege against self-incrimination, and the action of the court in advising the witness Holm, in the presence of the jury, that his testimony could not possibly tend to incriminate him. The entire record, so far as these assignments are concerned, is as follows:

"Carl Holm produced as a witness by and on behalf of the State, being first duly sworn, was examined, and testified as follows: * * *

"Q (By Mr. Voshell) Will you please state your name?

"A Carl Holm.

"Q Where do you reside?

"A Downstairs in the county jail.

"Q Are you acquainted with the defendant, James Polson?

"A I refuse to answer that question.

"THE COURT: Answer the question, Mr. Holm.

"A. I refuse to answer on the ground it may tend to incriminate me.

"THE COURT: Mr. Voshell, are you prepared to grant this witness immunity?

"MR. VOSHELL: Yes, your Honor.

"THE COURT: Answer, Mr. Holm.

"MR. VOSHELL: We will forego prosecution of Mr. Holm on any offense, providing, of course, he answers all of the questions with truth and honesty.

"THE COURT: Besides, this couldn't possibly—couldn't possibly tend to incriminate you, Mr. Holm.

"MR. VOSHELL: Of course, your Honor, we understand that this would not include waiving prosecution of Mr. Holm for perjury. We reserve the right, of course, to prosecute him for perjury, if that should, of course, appear.

"MR. HILLMAN: Your Honor, am I to understand you are granting immunity to this witness as to this particular charge?

"MR. VOSHELL: Yes, Mr. Hillman.

"MR. HILLMAN: That charge of assault with intent to kill?

"MR. VOSHELL: No. If I might state this, Mr. Hillman, that the immunity that the State offers Mr. Holm in this case is that he cannot be compelled to be a witness against himself in any criminal proceedings, and we certainly will not use any of his testimony that is adduced here today for any purpose of prosecution. And that is his immunity under the statute, I believe, your Honor.

"MR. HILLMAN: Your Honor, I am going to lodge my objection to that motion, upon this ground, that the defendant who is presently before the court might

well be the complaining witness and might have the perfect right to be the complaining witness in a prosecution of Mr. Holm on account of the incident that occurred on May second, Nineteen sixty-six, at the Holiday Inn. I think he has this right as a citizen of the State of Idaho and of the United States of America.

"MR. VOSHELL: In which case, your Honor, the State would not use any testimony of Mr. Holm in that trial against Mr. Holm.

"THE COURT: That's right. That's all it is.

"MR. HILLMAN: Would the defense be allowed to use that testimony?

"THE COURT: That would be a matter to be—

MR. HILLMAN: (Interrupting) In other words—

"THE COURT: That would be a matter to be decided when that comes up.

"MR. VOSHELL: That would be Mr. Holm's privilege to decide, as a defendant, whether he wanted to use his own testimony or not. But the State would not use it.

"MR. HILLMAN: What about the complaining witness, he has nothing to say about this? That's what I am getting at, your Honor. It's almost like a civil case.

"THE COURT: This is not a matter before us. You answer, Mr. Holm.

We find no error prejudicial to defendant in the court's action in regard to the witness Holm. First, it is to be noted that Holm was not an accomplice or a co-defendant in this case. On the contrary, he was alleged to have been the victim of the assault charged to have been committed by defendant. There was no showing made either expressly or by inference that the prosecuting attorney knew that the witness could or would exercise his claimed privilege. After the grant of immunity the witness testified fully as to the transaction or occurrence in the bar. His testimony tended to support the state's case against defendant. No request was made by the defense for an instruction to the effect that the witness' refusal to answer could not be the basis for an inference favorable either to the prosecution or the defense. The circumstances under which a claim of the privilege against self-incrimination, asserted in the presence of the jury, would be prejudicial to the defendant, is considered in the annotation appearing in 86 A.L.R.2d 1443 (1962) where the following appears at pages 1444 and 1445:

"In the few jurisdictions which have recognized that prejudicial error may possibly be committed when a prosecutor calls as a prosecution witness, with the design or purpose of extracting from the witness a claim of privilege against self-incrimination, one criminally involved in the offense for which a defendant is on trial, a finding of reversible error is, in general, predicated upon the following combination of facts and circumstances: it must appear directly or inferentially (1) that the witness appears to have been so closely implicated in the defendant's alleged criminal activities that the invocation by the witness of a claim of privilege when asked a relevant question tending to establish the offense charged will create an inference of the witness' complicity, which will, in turn, prejudice the defendant in the eyes of the jury; (2) that the prosecutor knew in advance or had a reason to anticipate that the witness would claim his privilege, or had no reasonable basis for expecting him to waive it, and, therefore, called him in bad faith and for an improper purpose; (3) that the witness had a right to invoke his privilege; (4) that defense counsel made timely objection and took exception to the prosecutor's misconduct; and (5) that the trial court refused or failed to cure the error by an appropriate instruction or admonition to the jury."

See also, Commonwealth v. Granito, 326 Mass. 494, 95 N.E.2d 539 (1950); State v. Lupino, 268 Minn. 344, 129 N.W.2d 294 (1964), cert. den. 379 U.S. 978, 85 S.Ct. 681, 13 L.Ed.2d 569 (1965); Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963); State v. Mitchell, 268 Minn. 513, 130 N.W.2d 128 (1964), cert. den. 380 U.S. 984, 85 S.Ct. 1351, 14 L.Ed.2d 276 (1965); Annot. 24 A.L.R.2d 895 (1952). In this case where the witness was the alleged victim of the assault charged against defendant, the inference, if any, to be drawn from his claim of the privilege would be that the witness believed he himself may have committed an offense on the occasion of the assault, which inference would be favorable to the defendant, and not prejudicial.

■ Defendant cites no authority in support of his contention that the granting of immunity to the witness, in the presence of the jury, was prejudicial, and we are not impressed by his argument in support thereof. Error will not be presumed on appeal, but must be affirmatively shown by the appellant. Morrison v. Quality Produce, Ins., 92 Idaho 448, 444 P.2d 409 (1968).

■ We do not find the remark made by the trial judge to the effect that the witness' answer could not incriminate him to be prejudicial. In addition we note the court's cautionary instruction:

"The court has no power to charge you upon the facts, or to indicate to you, either directly or indirectly, its views upon the merits. It is the duty of the court to charge you upon the law only. As jurors sworn to try the cause upon the law and the evidence you have no right to assume that the court has any views as to the verdict that should be arrived at as the result of your deliberations in this case. You must enter upon your deliberations with the understanding that the court has no opinion or idea as to what your verdict should be.

"The jury should not consider, or in any way, or to any extent, be influenced or controlled by the remarks or statements of the court in ruling upon the admissibility of evidence, or by evidence offered but not received, or by evidence ordered stricken from the record by the court, or by statements of counsel on propositions of law addressed to the court during the course of the trial. Your verdict should be based upon the evidence submitted and admitted at the trial and the instructions of the court applicable thereto, and upon nothing else." Instruction No. 22.

See Feeny v. Hanson, 84 Idaho 236, 371 P.2d 15 (1962).

■ Defendant assigns as error the failure of the reporter to record all of the oral proceedings had at the trial. At about 6:00 o'clock p. m. on the late afternoon of the second day of the trial during the examination of the state's rebuttal witness, officer Bateman, the tape recorder being used by the reporter developed mechanical failure so that the latter part of the witness' testimony was not recorded and does not appear in the transcript. The reporter certified that the omitted portion would consist of some five or six pages. At this point the court recessed until the following day. No further rebuttal was offered by the state, and defendant rested without offering any surrebuttal.

Mr. Robert K. Hillman, who acted as attorney for defendant at the trial, died pending the appeal and present counsel for appellant was not present at the trial. However, no effort was made by appellant to procure for the record a statement of what occurred during the brief period following the failure of the tape recorder, nor has any showing been made that anything transpired during that period which prejudiced the defendant. Defendant in his brief does not contend that prejudicial error occurred during that time. He makes the sole contention that since the statute, I.C. § 1–1103, requires the reporter to report all oral proceedings that the failure to make a complete record entitles him to a reversal. In Martinez v. State, 92 Idaho

148, 438 P.2d 893 (1968) this court reversed the judgment of the district court quashing a writ of habeas corpus, on the ground that no reporter was present and no record was made at the arraignment of the petitioner upon a charge of rape so that the record did not show affirmatively that he understandingly waived his right to counsel. That case is not in point here. In this case the defendant was ably represented by counsel at the trial and on appeal. No constitutional right has been denied him and no prejudice shown by the mechanical failure of the tape recorder. We think this case falls within the ambit of the Ricks cases [4] rather than the Martinez case.

Defendant also contends a new trial should have been granted by the district court because news publicly in the community where the trial was had, created a prejudicial atmosphere preventing him from having a fair trial. In support of his motion for a new trial defendant presented eleven local newspaper articles which appeared before and during the trial. In these articles references were made to defendant's prior convictions, and certain of the articles contained factual errors. Generally, however, the newspaper stories were restrained and responsible recitals of a doubtlessly newsworthy occurrence. At the opening of the trial and upon voir dire examination of the jurors the trial judge inquired of the jurors as to whether any of them had talked about the case with any of the parties or with anyone who purported to know the facts, and whether any of them had read or heard anything about the case which would cause him to make up his mind concerning the guilt or innocence of the defendant or as to what the facts in the case were. He then reminded the jurors that they must approach the case with an open mind, and that any decision they may make in the case must be based upon the evidence that comes from the witness stand, and from no other source.

He also reminded the jurors of the fundamental proposition of law that one accused of crime is innocent until he is proved guilty, and inquired if there were any among them who did not subscribe to that proposition. The jurors were then subjected to voir dire examination by counsel for the respective parties, after which they were sworn, and the trial commenced.

During the course of the trial, the trial judge, addressing the jury, stated that he had been advised by counsel for the defendant that the trial had been referred to on a television program the night before. Thereupon the court admonished the jurors that if any of them had listened to the program, you "pay absolutely no attention to it whatever," and further, "what you will determine will come from this witness stand, and no place else," and in instruction No. 22 the jurors were told:

"Your verdict should be based upon the evidence submitted at the trial and the instructions of the court applicable thereto, and upon nothing else."

The record does not show an aura of community prejudice resulting from the publicity complained of; that defendant's case was prejudiced; that he was denied a fair trial; or that he was denied due process of law. See State v. Scroggins, 91 Idaho 847, 433 P.2d 117 (1967). The showing as to publicity is also insufficient to justify a conclusion that the jury received evidence out of court contrary to I.C. § 19–2406(2), as suggested by appellant.

Defendant also assigns as error the refusal of his counsel's request for additional time to prepare for trial. Defendant was arrested in May, 1966. The minutes of the court reveal that he was represented by counsel on June 7, 1966. That attorney withdrew from the case June 13th. Attorney Hillman averred in his affidavit that he was contacted by defendant on June 27th; that he investigated the case, and

---

4. State v. Ricks, 34 Idaho 122, 201 P. 827 (1921); State v. Ricks, 32 Idaho 232, 180 P. 257, 13 A.L.R. 99 (1919); see Norvell v. Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963).

agreed to represent defendant on June 29, 1966. The trial commenced July 20, 1966. Neither the facts nor legal issues involved appear particularly complicated. We are unable to say from this record that defendant was prejudiced for want of further time to prepare for trial. The counsel asserted in his affidavit that he was so busy during the time between his employment and the commencement of trial in preparing to meet the state's evidence, and legal questions which might arise, that he overlooked the publicity given the incident and the possibility of claiming a change of venue. This question of local prejudice was fully developed in support of defendant's motion for a new trial, which, as we have seen, did not result in prejudice to defendant. The granting or refusing of a motion for a continuance under I.C. § 19–1909, is within the sound discretion of the trial court, and the action of the court thereon will be upheld in the absence of an abuse of that discretion. See State v. Fleming, 17 Idaho 471, 106 P. 305 (1910).

■ Three of defendant's assignments of error challenge the sufficiency of the evidence to sustain his conviction of being a persistent violator. The controlling issue raised is whether the court committed reversible error in the admission into evidence of state's exhibit 6. The exhibit purports to be a photostatic copy of the record of fingerprints taken of one "James B. Polson" at the sheriff's office in Twin Falls County, January 23, 1957. A judgment entered in the district court of Twin Falls County dated July 5, 1957, was admitted in evidence showing a conviction of one "James Polson" of the crime of burglary of the second degree committed on January 22, 1957, in Twin Falls County. Exhibit 6, the fingerprint record, was offered to establish the identity of the defendant as the same individual convicted of burglary of the second degree in Twin Falls County. Identification of the exhibit was attempted to be made through the testimony of Val Johnson, captain of the police department of Idaho Falls. Officer Johnson qualified

as an expert on fingerprints and was able to identify the prints recorded on exhibit 6 as those of the defendant. However, the exhibit bears a certification by the ex-officio recorder of Twin Falls County to the effect that he had compared the photo-copy with the original and found them to be identical. There is nothing in the record to establish the county recorder of Twin Falls County as the keeper of the fingerprint records, by whom such certification should be made under the provisions of I.C. § 9–315(6), and officer Johnson testified that the fingerprints were a part of the permanent records of the Twin Falls County sheriff's office. Consequently, the exhibit was not properly identified. In addition the fingerprints were not identified as those of the "James Polson" convicted of burglary of the second degree in Twin Falls County. The offered exhibit was therefore, subject to defendant's objection that a proper foundation had not been laid for its admission, and that it had not been properly identified. Admission of the exhibit was error. See Kleinschmidt v. Scribner, 54 Idaho 185, 30 P.2d 362 (1934); I.R.C.P., Rules 44(a) and 44(c).

■ It was established by other evidence that defendant had been previously convicted of a felony in Bonneville County. The recidivist statute, however, requires proof of three felony convictions. I.C. § 19–2514. Since defendant was not sufficiently identified as the same individual who was convicted of second degree burglary in Twin Falls County, the judgment convicting him of being a persistent violator must be reversed.

Finally appellant assigns as error the denial of his motion and supplemental motion for a new trial. The errors suggested thereby for the most part have already been considered in this opinion. Other errors suggested have not been supported by argument nor authority and will not be considered further. Supreme Court Rules, rule 41; see Vaughn v. Vaughn, 91 Idaho 544, 428 P.2d 50 (1967).

The judgment on conviction of the crime of assault with intent to murder is affirmed.

The judgment on conviction of being a persistent violator is reversed and that cause is remanded for a new trial.

SMITH, C. J., and McQUADE, McFADDEN and SPEAR, JJ., concur.