643 P.2d 555

The STATE of Idaho,
Plaintiff-Respondent,

v.

Jose Alphonso MARTINEZ,
Defendant-Appellant.

No. 13715.

Court of Appeals of Idaho.

March 30, 1982.

James C. Morfitt, Caldwell, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Lance Churchill, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

A jury found Jose Alphonso Martinez guilty of possession of stolen property, a felony, I.C. § 18–4612. The jury also found that he was a persistent violator of the law, I.C. § 19–2514. He appeals the stolen property conviction, alleging that conduct of the Sheriff of Canyon County violated his right to due process and denied him effective assistance of counsel and a fair trial. He also urges reversal of the persistent violator determination, contending that it was based upon evidence improperly admitted at trial. We *affirm*.

In September, 1979, the Owyhee County residence of Floyd Wood was burglarized. Several thousand dollars worth of property was taken, including sixty-three assorted firearms. Shortly after Wood reported the theft, the Sheriff of Canyon County

received a tip from an informant that Martinez was keeping guns in a plywood box near his mobile home in Canyon County, and that the guns had been stolen during an Owyhee County burglary. The sheriff placed the Martinez home under surveillance.

For nearly two months, the surveillance team monitored the box and all activity around the mobile home from a neighboring residence. During the surveillance the officers observed Martinez remove rifles or shotguns from the box. On November 29, Martinez and another man were observed loading the box into the back of a pickup. When the pickup departed from the Martinez premises, the surveillance team notified the sheriff and he immediately set out to intercept the vehicle.

Ronnie Hoskins, owner and driver of the pickup truck, was granted immunity from prosecution and testified at trial. He stated that Martinez, an old friend, had asked him to use the pickup to move a large box of books. Hoskins agreed. Hoskins also consented to keep the box of books in his camp trailer on his mother's property until December, when Hoskins planned to use the trailer for a hunting trip. After the box was loaded into the back of the pickup, Martinez climbed into the pickup cab, carrying a white canvas gun case, and the two drove off towards Hoskins's mother's home.

Soon after they started, they were stopped by a roadblock set up by the sheriff and his officers. The officers removed the two men from the pickup and placed them under arrest. Hoskins signed a written consent to search his pickup, but informed the officers that the box belonged to Martinez. Martinez spoke up in agreement and told the sheriff to get a search warrant before opening the box. The box was taken into custody by the sheriff but was not opened at that time.

The pickup cab was searched and three loose weapons were found. The white canvas gun case was also discovered, though neither Hoskins nor Martinez asserted ownership of it. The officer who found the case did not open it, but handling it convinced him it contained firearms or pieces of firearms. The three loose weapons were checked through the National Crime Information Center computer and were determined not to be stolen articles.

Hoskins and Martinez were taken to the Canyon County jail, along with the pickup and its contents. The gun case was opened at the sheriff's office without a search warrant. It contained two dismantled shotguns. When the serial numbers of those guns were checked through the computer, they were found to be two of the firearms taken from Wood's residence in Owyhee County.

A search warrant was issued for the box, based upon the informant's tip, the surveillance records, and the discovery of the stolen firearms in the canvas gun case. Forty-one firearms were found in the box, all identified by serial numbers as having been stolen from Wood's residence.

I.

On appeal Martinez argues that the trial court erred in failing to suppress the evidence obtained from the warrantless search of the canvas gun case. He also urges exclusion of the fruits of the search—the forty-one weapons discovered in the box pursuant to the search warrant—because the warrant was partially based upon the evidence found in the gun case. At the time the gun case was seized, neither Hoskins nor Martinez claimed ownership. At the suppression hearing, Martinez presented no evidence to show he owned the gun case or had a right to possess it. In fact, the outside of the gun case had the name "Jim Jones" and a California address marked on it in large black letters. The police opened the gun case at the station believing it belonged to Hoskins and believing it was within the scope of Hoskins's consent to search the pickup. Only when Hoskins was interrogated in the jail after the bag had been opened did the police learn that Martinez had carried the gun case into the pickup.

■ To claim the protection of the Fourth Amendment, a person must show he had a legitimate expectation of privacy in the invaded place. *State v. Bottelson*, 102 Idaho 90, 92, 625 P.2d 1093, 1095 (1981). Here, Martinez made no showing that he had a legitimate expectation of privacy in the gun case. Even assuming he had shown some legitimate right to possession of the gun case, we believe the trial court correctly denied the motion to suppress. The "plain view" exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband, when it is discovered in a place where the officer has a right to be. *Washington v. Chrisman*, —— U.S. ——, ——, 102 S.Ct. 812, 816, 70 L.Ed.2d 778 (1982); *State v. Smith*, 102 Idaho 108, 110, 626 P.2d 206, 210 (1981). Further, in *Arkansas v. Sanders*, 442 U.S. 753, 764 n. 13, 99 S.Ct. 2586, 2593 n. 13, 61 L.Ed.2d 235 (1979), a case involving the warrantless search of luggage seized from an automobile, the Supreme Court noted:

> Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools *or a gun case*) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. [Emphasis supplied.]

Here, the sheriff's officers had the pickup owner's consent to search his pickup, and the gun case was found in plain view on the seat in the pickup cab. The officer who discovered the gun case identified it as a standard shotgun or rifle case and, upon handling it without opening it, he believed it contained firearms or pieces of firearms. We hold that there was no reasonable expectation of privacy in the gun case at the scene of the arrest. *Arkansas v. Sanders, supra.* It follows that because no reasonable or legitimate expectation of privacy attached to the gun case at the scene of the arrest, there was no reasonable expectation of privacy in it at the time it was opened at the sheriff's office.

The trial court correctly refused to suppress the evidence found in the gun case. Consequently, there is no merit to Martinez's contention that the evidence found in the box should be suppressed because the search warrant for the box was partially based on the discovery of the stolen guns in the gun case.

## II.

While Martinez was incarcerated in the Canyon County jail, he was a suspect in an unsolved murder in Canyon County. He also had a prior criminal record. The sheriff, believing that Martinez posed a severe security risk, monitored and tape recorded all phone calls made by Martinez, including one call made to an attorney. Except for enumerated privileged communications, the mail Martinez both received and sent was photocopied. Martinez contends some of the photocopied mail contained information concerning the existence of his common law marriage to a woman who was a potential witness in the case. As a result of these activities, Martinez contends he was denied effective assistance of counsel because the prosecution had access to his confidential information and trial strategy. Martinez cites *State v. Cory*, 62 Wash.2d 371, 382 P.2d 1019 (1963) and *Coplon v. United States*, 191 F.2d 749 (D.C.Cir.1951), *cert. den.*, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952) as authority for dismissal of his case for interference with his right to counsel.

In *State v. Cory, supra*, the Washington Supreme Court found that police, using a hidden microphone, had listened to and taped conversations between Cory and his counsel. That court ordered dismissal of the charges against Cory after determining that a new trial would not afford him an adequate remedy for violation of his constitutional right to counsel. The extraordinary remedy of the *Cory* decision was later explained in the case of *State v. Baker*, 78 Wash.2d 327, 474 P.2d 254 (1970). It applies in Washington only when there has been prejudice that materially affects the right

of the accused to a fair trial that cannot be remedied by holding a new trial. *See also State v. Grant,* 9 Wash.App. 260, 511 P.2d 1013 (1973).

■■■ The rule in *Cory* is inapposite here. The attorney Martinez called was not his trial counsel, as in *Cory.* Neither Martinez, the attorney, nor anyone from the sheriff's office testified as to the substance of that conversation. We will not assume that trial tactics or strategy were discussed by Martinez and an attorney who did not represent him in court in this matter. Government intrusion into the attorney-client relationship may be grounds for a new trial. *Coplon v. United States, supra.* However, a defendant must show substantial prejudice caused by the intrusion. *United States v. Irwin,* 612 F.2d 1182 (9th Cir. 1980). None of the information gathered through surveillance of Martinez's mail or phone calls was used as evidence in his trial.

■■■ The question of whether Martinez was married to a common law wife was the subject of a pretrial hearing. Although the monitored conversation may have disclosed her possible testimony at the hearing, the court ruled that Martinez was entitled to invoke the marital privilege to prevent the wife from testifying as a witness for the state. No prejudice to Martinez is shown. Although we do not condone the practice of monitoring phone calls in either of these situations, the conduct did not prejudice Martinez's right to a fair trial. We find that this conduct did not deny Martinez effective assistance of counsel and that dismissal of the information or a grant of new trial is not warranted.

### III.

The sheriff's office erased tape recordings of two phone calls Martinez placed from the jail. Both were person-to-person long distance calls, operator assisted. The sheriff erased the tapes because he felt they contained no material evidence. With respect to each call, the record shows the only conversation erased was the operator's statement that the party called was not at that number.

Martinez contends the sheriff's acts deprived him of his right to a fair trial because the tapes may have disclosed possible exculpatory evidence. He also urges us to find prejudicial error in the prosecution's unilateral determination to erase the tapes without first allowing defense counsel first to review them. However, he offers no evidence by way of his own testimony or the testimony of either party called that would establish anything other than the erasure of the operator's statements.

■■■ The prosecution has a duty to disclose statements made by witnesses or potential witnesses when there is a substantial basis for claiming materiality of the statement in preparing for or conducting the defense. *State v. Brown,* 98 Idaho 209, 212–13, 560 P.2d 880, 883–84 (1977). The proper test, to determine whether failure to disclose such a statement is grounds for a new trial, is whether the evidence contained in the statement might have affected the outcome of the trial. *Id.,* at 213, 560 P.2d at 884. However, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. *United States v. Agurs,* 427 U.S. 97, 109–10, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976).

■■■ Martinez has failed to show anything other than the operator's statement on the erased tapes. Such a statement would not have affected the trial. We hold the erasure of the tapes was not a violation of Martinez's right to a fair trial. A prudent law enforcement official would not erase any taped conversations, however, and we feel the better practice for the future would be erasure of such taped evidence only after review by defense counsel and his determination that the evidence is not material to the defense.

### IV.

■■■ The State filed an Amended Information, Part II, alleging Martinez was a

persistent violator of the law, subject to enhanced punishment under I.C. § 19–2514. Pursuant to this statute, any person convicted for the third time of the commission of a felony shall be sentenced to the custody of the State Board of Correction for a term of not less than five years, and such term may be extended to a life sentence. The former convictions relied upon to invoke I.C. § 19–2514 must be alleged in the indictment or information and proved at trial, and the identity of the person formerly convicted must be established beyond a reasonable doubt. *State v. Lovejoy*, 60 Idaho 632, 637, 95 P.2d 132, 134 (1939).

Here, the present offense and a previous felony conviction in Idaho were established in accordance with the rule in *Lovejoy, supra,* as proof of two of the required three convictions. The state presented evidence of the other required conviction through introduction of State's Exhibits 66 and 68, and by testimony of a fingerprint comparison.

Exhibit 68 was a certified copy of a 1973 federal judgment of conviction of one Jose Alphonso Martinez for the felony offense of transporting stolen property in interstate commerce. It was proved by the attestation of the clerk of the United States District Court, for the Central District of California. The seal of that court was annexed to the attestation. Exhibit 68 complied with Idaho's requirement for proper authentication of a judicial record, I.C. § 9–312, and it was admitted without objection. With nothing more than this copy of the federal judgment, however, the identity of the person formerly convicted would not be established beyond a reasonable doubt.

Exhibit 66 was a package of photocopied records, certified by the official custodian of records for McNeil Island Federal Prison Camp, Washington. Contained in the package were a copy of the 1973 judgment of conviction admitted as Exhibit 68, a photocopy of two mug shots of J. Martinez, and a fingerprint card of Jose Alphonso Martinez made in 1975 at Lompoc Federal Prison Camp, California. The mug shots and fingerprint card would establish

the defendant Martinez as the person convicted of the federal offense. Martinez contends admission of the fingerprint card was error because it was not properly authenticated. He argues there was no proof the custodian of records at McNeil Island, Washington, had the authority to certify records from Lompoc, California, pursuant to I.C. § 9–312.

As authority for this argument, Martinez relies on *State v. Polson*, 92 Idaho 615, 448 P.2d 229 (1969). The court in *Polson* reversed a persistent violator determination because the fingerprint card was not properly authenticated under I.C. § 9–315(6). In *Polson* there was nothing in the record to establish the county recorder as the keeper of fingerprint records, by whom proper certification must be made under the statute. Without the fingerprint record, the defendant Polson was not identified as the same person convicted in a prior felony. *Polson* is inapposite to this case. Here the record establishes the documents as records of McNeil Island, and they were certified by the official custodian of records for McNeil Island.

A judicial record of the United States may be proved by the production of the original, or a copy thereof, certified by the clerk or other person having legal custody thereof. I.C. § 9–312. Even though the fingerprint card in Exhibit 66 had "Lompoc" printed on it as the place where the prints were taken, it was a record that the official custodian of records of McNeil Island attested as being a true copy of records of McNeil Island. We hold that this certification was sufficient under I.C. § 9–312 notwithstanding where the card originated. At trial, testimony was given regarding the similarity of the fingerprints taken of Martinez at the time of his arrest and the fingerprints appearing on State's Exhibit 66. From this evidence, the jury could, and did, find the defendant Martinez and the Martinez in the federal conviction were the same person.

## V.

Martinez's counsel were appointed after two prior appointed counsel had requested

and were granted leave to withdraw from representation. Martinez's attorneys were aware that the Sheriff of Canyon County had, at least on one prior occasion, conversed with Martinez in private at the sheriff's office, without Martinez's counsel being present. The attorneys sent a letter to the sheriff requesting notification and opportunity to be present at any further discussions or interviews between Martinez and the sheriff or any other law enforcement agent. Thereafter, and notwithstanding the letter, the sheriff interviewed Martinez twice without his counsels' presence.

These discussions involved several matters. The sheriff and Martinez discussed the possibility of bond reduction, a change in a restricted visitation policy, and the possibility of leniency in the present case if Martinez supplied information concerning the unsolved murder. Apparently Martinez and the sheriff mutually agreed to each meeting. All of the conversations were tape recorded, but it is not clear whether Martinez knew they were being recorded at the time.

Martinez moved to dismiss the information on the basis that he was denied his Sixth Amendment right to effective assistance of counsel because the discussions were tape recorded without the presence of his attorneys. The trial court denied the motion, determining that the proper remedy for such constitutional violations was to suppress any evidence that may have been acquired by the state in the discussions. The order of suppression was effective for the state's case-in-chief, and for rebuttal and impeachment purposes. Martinez now urges us to reverse the trial court's refusal to dismiss the information.

█ We think it is clear that Martinez had a right to have his counsel present during the conversations with the sheriff. *State v. Sadler*, 95 Idaho 524, 528, 511 P.2d 806, 810 (1973). For the purpose of this opinion, we will assume Martinez did not knowingly waive that right. The question is whether suppression of all evidence acquired in the discussions was the proper remedy for violation of Martinez's rights, or whether dismissal of the information would have been more appropriate.

█ We have reviewed the transcript of the recorded interviews and find no statement by Martinez regarding his case which could have alerted the state as to his defense trial strategy. At one point, the sheriff made a comment regarding defense counsel's tendency, due to ethical considerations, not to get involved in plea bargaining of the type he and Martinez were discussing. This remark was in response to Martinez's statement that the pressures of his upcoming trial were beginning to make him "paranoid", and he wondered why his counsel had not contacted the sheriff as he had requested. We see nothing in the sheriff's response which could have destroyed Martinez's confidence in his attorneys. Nor does the record indicate that Martinez lacked confidence in his counsel or was dissatisfied with counsel's representation. Both at trial and on appeal, Martinez's counsel have given him a competent and vigorous defense.

Although the overzealous behavior of the sheriff in conducting these discussions without defense counsel present was highly improper, we agree with the trial court's decision that suppression of all evidence acquired in the discussions sufficiently guaranteed defendant a fair trial. *See United States v. Irwin*, 612 F.2d 1182 (9th Cir. 1980). We concur with the trial court that dismissal of the information was not required.

The judgment of conviction is affirmed.

BURNETT and SWANSTROM, JJ., concur.