801 P.2d 1283

**Gene Francis STUART,**
**Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 18653.**

Supreme Court of Idaho.

Nov. 28, 1990.

4. Unlike Stuart, O'Neill opted to plead guilty, so that case never got to a jury.

Robert E. Kinney, Jr., Orofino, for petitioner-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for respondent. Lynn E. Thomas argued.

McDEVITT, Justice.

This is the fourth opportunity for this Court to review the murder conviction and imposition of the death penalty of Gene F. Stuart. In 1982, the appellant was found guilty of the first degree murder by torture of three-year-old Robert Miller. This Court first upheld the imposition of the death penalty in *State v. Stuart*, 110 Idaho 163, 715 P.2d 833 (1985). Subsequently, the appellant brought his first Petition for Post–Conviction Relief which was dismissed by the trial court. Upon rehearing, this Court upheld the dismissal of the first petition in *Stuart v. State*, 118 Idaho 865, 801 P.2d 1216 (1990). The appellant now appeals the trial court's dismissal of his Second and Subsequent Petition for Post–Conviction Relief ("the second petition"). We reverse and remand with instructions.

## BACKGROUND

The appellant brought his second petition alleging that while incarcerated in the Clearwater County jail awaiting trial, the Sheriff's Department monitored and recorded his telephone conversations and also his private conversations held at the jail. The appellant alleged that confidential attorney-client conversations were monitored and that the prosecution used these conversations to gain evidence it otherwise did not have in its possession. The appellant alleged that this monitoring violated his right to effective assistance of counsel and

his right to due process under the United States Constitution.

Accompanying the petition, the appellant submitted the affidavits of former Clearwater County Sheriff's Department employees that substantiated his claim that his conversations were monitored. The affidavits supported his contention that conversations between the appellant and his trial counsel, Robert E. Kinney, and also a Mr. Chris L. Matson, an attorney from Seattle, Washington, were recorded. Subsequently, the appellant filed the affidavit of Chris L. Matson who had previously represented the appellant and who discussed the facts surrounding the charges in this case with the appellant. Mr. Matson's affidavit stated the substance of conversations held with the appellant while incarcerated.

The State does not deny that the Clearwater County Sheriff installed a "security monitoring system" to monitor the appellant's telephone and personal conversations. It appears that all incoming and outgoing telephone calls of the appellant were in fact monitored and recorded. The sheriff also concealed a microphone in a false thermostat in the attorney-client conference room in order to monitor and record these conversations. The State maintains that this system was necessary in order to maintain security in the jail and that if attorney-client conversations were monitored, it was done inadvertently.

## ISSUES

The issues involved in this appeal are: (1) Was the Second Petition for Post–Conviction Relief timely brought? (2) Was summary disposition of the petition proper?

## ARGUMENT

Idaho Code § 19–4908 requires that all legal and factual grounds for relief must be raised in the first petition for post-conviction relief. Any grounds for relief not raised are permanently waived if

the grounds were known or should have been known at the time of the first petition. Subsequent petitions are allowed if the appellant states a sufficient reason for not asserting the grounds in the earlier petition. Hence, there is no absolute prohibition against successive petitions for relief. *Palmer v. Dermitt*, 102 Idaho 591, 635 P.2d 955 (1981).

In his second petition, the appellant states that the facts surrounding the second petition were only discovered "recently." The accompanying affidavits make it very evident that the facts surrounding the second petition were not known to the appellant until the summer of 1988. It was not until a Mr. Oliver, a former Police Officer for the city of Pierce, informed the appellant's attorney that he was aware of the recording of the appellant's conversations that these facts came to the attention of the appellant and his attorney. Since the facts were unknown at the time of the first petition, we hold that the second petition is timely and proper.

We are next confronted with the critical issue. Was summary disposition proper in this case? Summary disposition is proper only where there exists no material issue of fact. I.C. § 19–4906(c); *State v. Goodrich*, 104 Idaho 469, 660 P.2d 934 (1983). On appeal, our task is to determine whether the appellant has alleged facts in his petition that if true, would entitle him to relief. *Clark v. State*, 92 Idaho 827, 452 P.2d 54 (1969). To determine if the petition alleged sufficient facts to withstand summary disposition, it is necessary to discuss some preliminary matters.

The appellant was confined in the Clearwater County Jail for twenty-four days before an attorney was appointed to represent him. During this twenty-four day period, the appellant contacted Mr. Matson, an attorney in Seattle who had represented him before. Included in these discussions between the appellant and Mr. Matson, were the names and locations of various witnesses who were later called to testify at trial by the State.

■■■ What was the relationship between Mr. Matson and the appellant? Mr. Matson had represented the appellant previously, but was not his attorney at trial. Usually the payment of a fee or retainer is evidence of an attorney-client relationship, but it is not necessary. An attorney-client relationship can be established when the attorney is sought for assistance in matters pertinent to his profession. *In the Matter of the Adoption of Baby Boy Irons*, 235 Kan. 540, 684 P.2d 332 (1984). It is apparent that the appellant consulted Mr. Matson for legal advice concerning the charges against him. We find that there is a triable issue of fact as to whether the conduct of the appellant and Mr. Matson established an attorney-client relationship.

What is the effect of monitoring and recording attorney-client conversations? Our Court of Appeals confronted this issue in *State v. Martinez*, 102 Idaho 875, 643 P.2d 555 (Ct.App.1982). *Martinez* involved the monitoring and recording of the defendant's conversation with an attorney. The court found that since neither the defendant nor the attorney testified as to the substance of the conversation, the court would not assume that trial tactics or strategy were discussed in this conversation. Since the defendant was unable to prove any substantial prejudice, the court found that a new trial was not warranted. This case differs from *Martinez* in that the appellant, his trial counsel, and Mr. Matson have described the content of the telephone conversations. We now must decide if these allegations warrant further investigation in the form of an evidentiary hearing.

■■■ We begin our analysis by recognizing that an accused has the constitutional right to assistance of counsel. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); U.S. Const. amend. VI. This right is fundamental and is not a luxury. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). So fundamen-

tal is this right that it has been recognized as the right to *effective* assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). This right to effective assistance cannot be disregarded by the states. *Reece v. Georgia,* 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955).

We hold that the monitoring and recording of attorney-client conversations may deny a defendant the constitutional right of effective assistance of counsel, *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *State v. Cory,* 62 Wash.2d 371, 382 P.2d 1019 (1963); the constitutional right to due process, *Coplon v. United States,* 191 F.2d 749 (D.D.C. 1951), *cert. denied,* 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952). *See also, Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Attorney-client conversations are constitutionally protected and cannot be invaded by the State. *In re Bull,* 123 F.Supp. 389 (D.Nev.1954); *State v. Cory,* 62 Wash.2d 371, 382 P.2d 1019 (1963). A defendant and his attorney must be afforded the opportunity to discuss freely and confidentially.

The affidavits submitted by the State in response to the appellant's petition were insufficient to rebut the allegations of the appellant. There remain material issues of fact concerning the monitoring and recording of the appellant's attorney-client conversations.

■ Therefore, we hold that the appellant raised sufficient facts in his second petition to withstand the motion for summary disposition. The trial court erred in dismissing his petition by summary disposition. We remand this case back to the trial court with instructions to hold an evidentiary hearing. We instruct the trial court to determine: (1) whether there was recording of attorney-client conversations on the part of the Sheriff's Department; and, (2) whether the appellant's constitutional rights were violated. If such attorney-client conversations are found to have been recorded, the State will be required to show that the evidence at trial had an origin independent of the eavesdropping. Any knowledge wrongfully gained by the government cannot be used against a defendant. *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

## CONCLUSION

The trial court's dismissal of the appellant's Second and Subsequent Petition for Post–Conviction Relief is reversed and remanded with instructions to hold an evidentiary hearing on the issues raised by the appellant.

BAKES, C.J., and BISTLINE, JOHNSON and BOYLE, JJ., concur.

BISTLINE, Justice, specially concurring:

Having joined the opinion of Justice McDevitt, my only purpose in writing is to exclaim at the new turn in the continuing prosecution of Stuart for the death of a child. This 1981 alleged torture murder was the first charged in almost one hundred years of Idaho territorial and statehood law and order. There was no prior torture murder case, thus making it all the more irrational that Stuart was so charged when consideration is given to the fact that he could have been charged with ordinary first degree murder.

A great concern, then, was why Stuart was charged with torture murder, and only that. Another great concern is the district judge's creation of absurd obstacles which thwarted Stuart's counsel, Robert Kinney, in his attempts to obtain a fair trial for Stuart. Those obstacles, which have been mentioned in previous opinions, included:

> giving defense counsel a paltry $300 with which to investigate the alleged crime; changing venue to Moscow, Idaho, the judge's home town;

> advising the jury that a then-present gap in Idaho statutory law allowed him to not sequester the jury. And he did not se-

quester it, leaving the jurors exposed to daily provocative news articles for the entire length of the trial;

not ruling on a defense motion pertaining to introduction of evidence which was requested so counsel would be able to muster and prepare defense witnesses;

making the absolute misstatement at sentencing that defense counsel had stipulated that the judge could consider and utilize testimony of state witnesses at Stuart's preliminary hearing. The witnesses were women who had lived with Stuart at various times and testified that each of them had been subjected to physical mistreatment; however, the judge was not the magistrate who had conducted the preliminary hearing.

The district court declared testimony at the preliminary hearing to be evidence which the state could properly present to the jury in order to establish Stuart's purported propensity to torture women, and his putative propensity to torture a small boy. It cannot be forgotten that the district judge, in his own courtroom, was told by the prosecutor that Stuart could not receive a fair trial if his attorney was not provided with proper resources to investigate. At trial the evidence adduced included far more as to Stuart's alleged mistreatment of women in the past than it did to striking the child in the stomach which caused enough damage that the child, according to the charge of the information, "sickened and died."

Thus it came about at trial that Mr. Kinney had to defend Stuart on actual information charges of first degree torture murder, and at the same time defend against the non-charged crimes, including a hospital rape of one of the women witnesses, and an unrelated attempted drowning of another, all because the district judge had ruled this evidence as being necessary to prove torture murder. Now, as Paul Harvey would say, here is the rest of the story. The witnesses who Mr. Kinney could not locate, for perhaps some reason other than his lack of time and funds, and could not adequately prepare against, are now belatedly learned to be—from the mouths of conscientious citizens—the same women the whereabouts of whom had been discussed in wire-tapped conversations between Stuart and an attorney who was advising him from western Washington. The district judge in his sentencing decision said that Stuart had been found by him—just him, and not the jury—to be *guilty beyond a reasonable doubt* of whatever those women testified Stuart had done to them.

While I do understand that in ordinary circumstances further proceedings in district court as directed should be had, here the circumstances are extraordinary to the extent that a grand jury should also be convened to inquire into the matter of not unlikely lawbreaking and interference with the due process of law by law enforcement officials, and perhaps others who were interested in seeing that Stuart was convicted and executed. In sum, I agree with the directions on remand as stated by Justice McDevitt, and at the same time believe that only a grand jury will be able to ferret out every last bit of evidence as to what was being clandestinely done.