838 P.2d 301

**Gil and Miriam WICK and Northwest Speedway, Inc., Plaintiffs–Appellants,**

v.

**Samuel EISMANN, individually and in any corporate capacity, Defendant–Respondent.**

No. 18821.

Supreme Court of Idaho,
Boise, March 1992 Term.

Aug. 31, 1992.

Rehearing Denied Nov. 4, 1992.

---

Seiniger, Nevin, Kofoed and Herzfeld, Boise, for plaintiffs-appellants. Wm. Breck Seiniger, Jr., argued.

Quane, Smith, Howard & Hull, Coeur d'Alene, for defendant-respondent. Susan K. Servick, argued.

McDEVITT, Justice.

*Background and Prior Proceedings*

In 1971, appellant Gil Wick retained the law firm of Miller & Eismann for the pur-

pose of forming a corporation. Northwest Speedways, Inc. ("NSI") was incorporated on September 1, 1971, by the law firm of Miller & Eismann. There were three organizing shareholders in NSI, one of which was appellant Wick. Mr. Wick owned 33.3% of NSI. Beginning in 1972, Samuel Eismann of the law firm Miller & Eismann acted as NSI's attorney for all purposes.

On December 1, 1975, NSI forfeited its corporate status. The reason for the forfeiture of corporate status was that Eismann had failed to file the required reports and documents with the Secretary of State. Eismann did not inform appellant Wick of this event.

On May 5, 1976, Colonial Enterprises, Inc. ("Colonial"), an Idaho corporation, and NSI entered into a contract. In the Colonial–NSI contract, the parties agreed that Colonial would hold a rock concert at the speedway on June 4, 5, and 6, 1976. In addition, Colonial would designate NSI as an additional insured under a policy of insurance required by Kootenai County, Idaho. The policy procured by Colonial was issued by Market Insurance Company ("Market").

At the rock concert, someone stole the gate receipts. When the various musicians found out that they would not be paid they refused to perform. In turn, the crowd of concert-goers rioted, destroying the buildings and fixtures of the speedway.

Appellant Wick approached Eismann and retained him to handle the claims of NSI arising out of the riot and fire at the speedway. NSI brought an action against Colonial. NSI won a default judgment in the amount of $606,000.

Market filed a declaratory action against Colonial. In the declaratory action, Market contested coverage under the liability provisions of the insurance policy. The case was dismissed for lack of prosecution on February 13, 1985.

Market became insolvent and went into liquidation in 1980. The liquidator of Market sent Eismann a notice of claim form. This form had to be filed with the liquidator by December 31, 1982. Eismann did not file this form by the due date and, thus, NSI lost priority on its claims under the insurance policy.

In 1982, appellant Wick hired attorney Robert Roberts to pursue certain claims Mr. Wick had against NSI. On September 28, 1982, Gil and Miriam Wick commenced actions in Spokane County, Washington, against NSI and its former directors. In early 1983, attorney Roberts learned that attorney Eismann had represented NSI. Roberts attempted over the next few months to contact Eismann, but Roberts was unsuccessful in obtaining any meaningful access to the NSI files maintained by Eismann. The Wicks obtained a default judgment against NSI in August of 1983.

On March 1, 1986, NSI was dissolved pursuant to I.C. § 30–1–138(a).

The present lawsuit was filed in 1986. In their second amended complaint, appellants alleged respondent had committed legal malpractice by (1) failing to file a timely notice of claim on behalf of NSI in the liquidation of Market, and (2) obstructing appellants' efforts to view NSI's files and failing to keep appellants informed of the progress of matters entrusted to Eismann. Appellants also alleged that there may have been other acts of legal malpractice of which appellants were not aware due to their lack of access to the NSI files.

On July 14, 1989, respondent moved for summary judgment. The district court denied summary judgment as to the respondent's argument that the Market insurance policy did not provide coverage for the appellants' loss and that appellants' claim was barred by the statute of limitations. However, the district court granted summary judgment as to the appellants' causes of action based upon their pursuing a claim for relief allegedly purchased by them from NSI. The district court dismissed these causes of action because NSI no longer existed as a corporation and did not have the capacity to sue. In addition, the district court dismissed all causes of action brought or maintained by appellant Gil Wick as the statutory trustee for the former corporation because the other directors of NSI did not join the suit. Appellants

concede that this ruling dismissed all claims brought by Miriam Wick against Eismann.

After this ruling, the only claim remaining was appellant Gil Wick's claim that Eismann committed legal malpractice as to Mr. Wick in his individual capacity.

A second motion for summary judgment was filed by respondent on February 20, 1990. The district court granted this second motion for summary judgment, dismissing appellants' complaint on the ground that "Gil Wick was an adverse party, as a result of his suit against Northwest Speedway, Inc., which was filed on September 28, 1982, whose interest *could not* be represented by the [respondent], who was then the attorney for [NSI]." (Emphasis added.) Appellants appeal from this ruling.

### Analysis

Before we begin our analysis of the single issue involved in this case, it is necessary to identify the applicable standard of review for this Court to follow.

In an appeal from a motion for summary judgment, this Court's standard of review is the same as the standard used by the trial court in passing upon a motion for summary judgment. *McDonald v. Paine,* 119 Idaho 725, 810 P.2d 259 (1991); *Meridian Bowling Lanes, Inc. v. Meridian Athletic Ass'n, Inc.,* 105 Idaho 509, 670 P.2d 1294 (1983). All facts and inferences from the record will be viewed in favor of the nonmoving party to determine whether the motion should be granted. *Treasure Valley Bank v. Butcher,* 117 Idaho 974, 793 P.2d 206 (1990); *Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238 (1986); *Farmers Ins. Co. of Idaho v. Brown,* 97 Idaho 380, 544 P.2d 1150 (1976). The burden of proving the absence of material facts is upon the moving party. *Petricevich v. Salmon River Canal Co.,* 92 Idaho 865, 452 P.2d 362 (1969). A mere scintilla of evidence is insufficient to create a material issue of fact. *Id.* Judgment shall be rendered if the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact. I.R.C.P. 56(c);

*Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982).

In this case, the district court granted summary judgment as a matter of law, holding that since there would be a conflict of interest if respondent represented both NSI and appellants as an individual, respondent could not have represented appellants.

■ An attorney who represents multiple clients with conflicting interests may subject that attorney to liability for legal malpractice. *See Lysick v. Walcom,* 258 Cal.App.2d 136, 65 Cal.Rptr. 406 (1968). Whether or not respondent represented both NSI and appellants is a question of fact. *Stuart v. State,* 118 Idaho 932, 934, 801 P.2d 1283, 1285 (1990). Therefore, we must look to the evidence that was before the district court when it granted respondent's motion for summary judgment to determine whether there was a genuine issue of material fact regarding whether respondent represented appellants.

Mr. Gil Wick filed an affidavit on March 9, 1990. In this affidavit, appellant Gil Wick stated the following:

### III.

I originally retained the firm of Miller and Eismann in 1971 or 1972 to act on my behalf in forming a corporation. I was not advi[s]ed by anyone that they were not representing me individually or that I needed separate counsel.

### IV.

I advised both Mr. Eismann and Mr. Miller that I was personally investing in the operation of the speedway, and made it apparent to them that the corporate form of organization was being utilized for purposes of limiting ... my liability as well as Mr. McKim's and Mr. Eberle's. I believe that our conversations with these attorneys made it clear that my financial affairs were directly implicated by the conduct of the speedway business and that I needed legal advice.

## V.

The firm eventually assumed responsibility for the legal affairs of the corporation, though no specific arrangement was made with either Mr. Eismann or Mr. Miller for representation separate from the arrangement which Mr. Eberle, Mr. McKim, and I had with the firm.

## VI.

In 1973 or 1974 Mr. Eismann left Mr. Miller's firm and took over my file and, to the best of my knowledge, assumed responsibility for my interests in [NSI] and the corporation[']s affairs.

## VII.

I met with Mr. Eismann many times over the years. I was never advised that Mr. Eismann was not representing my interest in the corporation or that I should obtain separate counsel. Relying on this I did not seek other counsel to represent my interests in the corporation. If I had been so advised I would have sought other counsel.

■ The above-quoted portions of Gil Wick's March 9, 1990 affidavit raise an issue of fact as to whether respondent did provide legal representation to appellants in their individual capacity.[1] *See Stuart*, 118 Idaho at 934, 801 P.2d at 1285, wherein we stated that "[a]n attorney-client relationship can be established when the attorney is sought for assistance in matters pertinent to his profession." Citing *In re Baby Boy Irons*, 235 Kan. 540, 684 P.2d 332 (1984).

We find that there is a triable issue of genuine fact (however doubtful recovery may be had on it) as to whether there was an attorney-client relationship between appellants and respondent, and we therefore reverse and remand this cause to the district court.

Costs to appellants.

BISTLINE, J., and REINHARDT, J. Pro Tem., concur.

1. The adequacy of the evidentiary foundation and the conclusionary statements in the affida-

BAKES, Chief Justice, dissenting:

The basis of Wick's remaining legal malpractice claim is the failure of the respondent to take action for the corporation, not a failure to act for Wick in his status as an individual. The damages sought by Wick arose from Eismann's alleged failure to file the required corporate reports and documents with the Secretary of State, which resulted in a forfeiture of NSI's corporate status, and for his failure to file the notice of claim form sent by the liquidator of Market, which resulted in NSI losing priority against Market in the liquidation proceedings. These claims belong to NSI, the corporation, and do not inure to Wick in his individual capacity. The record clearly established that NSI's corporate charter was forfeited and has never been reinstated, and thus it has no capacity to sue. I.C. § 30-1-135. Merely because he was a director and owner of some of the stock does not make the corporation's claims his personal claims. The trial court did not err in dismissing Wick's complaint.

JOHNSON, Justice, dissenting.

I respectfully dissent from the Court's opinion.

In my view, the portions of Gil Wick's March 9, 1990, affidavit quoted in the Court's opinion do not raise a genuine issue of material fact as to whether Eismann provided legal representation to Wick in his individual capacity. The most that can be said from reading these portions of Wick's affidavit, and from the reasonable inferences that can be drawn from them, is that Wick believed, to the best of his knowledge, that Eismann was representing him individually, and that he was never advised to the contrary by Eismann. Belief and speculation are not a sufficient basis, in my view, to raise a genuine issue whether Eismann was Wick's lawyer. I would affirm the summary judgment.

vits were not raised at trial or on appeal.