90 P.3d 884

In the Matter of the Order Certifying
Question of Law to the Idaho
Supreme Court.

Terri HARRIGFELD and Sara
Harrigfeld, Plaintiffs–
Appellants,

v.

J.D. HANCOCK and Smith, Hancock &
Zollinger, a partnership, Defendants–
Respondents.

No. 29445.

Supreme Court of Idaho,
Boise, December 2003 Term.

Jan. 29, 2004.

Ellis, Brown and Sheils, Chtd., Boise, for appellants. Allen B. Ellis argued.

Benoit, Alexander, Sinclair, Harwood & High, L.L.P., Twin Falls, for respondents. Thomas B. High argued.

EISMANN, Justice.

This is a certified question of law from the United States Court of Appeals for the Ninth Circuit regarding whether a direct attorney-client relationship is required to exist in order for the intended beneficiary of testamentary instruments to sue the attorney who drafted the instruments for malpractice. We hold that it is except in a very narrow circumstance.

## I. FACTS AND PROCEDURAL HISTORY

In December 1992, the defendant-respondent J.D. Hancock, a partner in the law firm of Smith, Hancock & Zollinger, prepared a will for Delilah Henry. He subsequently prepared three codicils to the will, one in February 1995, one in May 1995, and the last in October 1996. Each of the codicils expressly revoked all prior codicils. Ms. Henry died on October 12, 1997, and the plaintiff-appellant Terri Harrigfeld was appointed the personal representative of her estate.

Terri Harrigfeld and her daughter (the Harrigfelds) later filed a legal malpractice action against Mr. Hancock and his law firm in the United States District Court for the District of Idaho. They alleged that Ms. Henry intended that the three codicils were to be cumulative in nature, but Mr. Hancock

negligently drafted the third codicil to revoke the prior codicils, thereby depriving them of property Ms. Henry intended that they receive under the second codicil.

The federal district court dismissed the action on the defendants' motion for summary judgment on the ground that the Harrigfelds had no cause of action for legal malpractice under Idaho law because they did not have an attorney-client relationship with the defendants. The Harrigfelds then appealed, and the Ninth Circuit certified a question of law to this Court, which we accepted on March 24, 2003.

## II. CERTIFIED QUESTION

■ The question certified is as follows: "Is a direct attorney-client relationship required to exist between the plaintiff and the attorney-defendant in a legal malpractice action when the plaintiff alleges to be an intended beneficiary of testamentary instruments drafted by the attorney-defendant for a third-party testator?"

## III. ANALYSIS

United States courts may submit to the Idaho Supreme Court a certified question of law as to which there is no controlling precedent among the decisions of the Court. IDAHO APP. R. Rule 12.1. Because the question is one of law, this Court exercises free review. *Hegg v. Internal Revenue Serv.*, 136 Idaho 61, 28 P.3d 1004(2001).

■ We have never previously addressed the issue of whether a legal malpractice action must arise out of an attorney-client relationship between the plaintiff and the defendant attorney. We first listed the elements of a cause of action for attorney malpractice in *Johnson v. Jones*, 103 Idaho 702, 706–07, 652 P.2d 650, 654–55 (1982), wherein we stated:

Legal malpractice actions are an amalgam of tort and contract theories. *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (1971); *Higa v. Mirikitani*, 55 Hawai'i 167, 517 P.2d 1 (1973). We have already determined that Nagel breached no con-

tractual duty owed to the Johnsons. As to the tort basis for the Johnsons' claim:

"The elements of a legal malpractice action are: (a) the existence of an attorney-client relationship; (b) the existence of a duty on the part of the lawyer; (c) failure to perform the duty; and (d) the negligence of the lawyer must have been a proximate cause of the damage to the client. . . .

"As to the burden of proof in such cases . . . '[t]he burden of proving that an attorney has been negligent or failed to act with proper skill and that damages resulted therefrom is on the plaintiff client' and . . . '[l]ikewise, the burden is on the plaintiff to show that the negligence of the attorney was a proximate cause of the client's damage.' " *Sherry v. Diercks*, 29 Wash.App. 433, 628 P.2d 1336, 1338 (1981) (citations omitted).

We agree with the Washington court as to the elements of a cause of action for legal malpractice and to allocation of the burden of proof in such cases.

When stating the elements in the abstract, we have since characterized the first element as "the creation of an attorney-client relationship," *Lamb v. Manweiler*, 129 Idaho 269, 272, 923 P.2d 976, 979 (1996); *Jordan v. Beeks*, 135 Idaho 586, 590, 21 P.3d 908, 912 (2001); and "the existence of an attorney-client relationship," *Marias v. Marano*, 120 Idaho 11, 13, 813 P.2d 350, 352 (1991); *Blough v. Wellman*, 132 Idaho 424, 425, 974 P.2d 70, 71 n. 1 (1999). We have always stated the fourth element of the cause of action, however, as requiring proof that the attorney's breach of duty was a proximate cause of injury or damage to "the client." *Jordan v. Beeks*, 135 Idaho 586, 590, 21 P.3d 908, 912 (2001); *Blough v. Wellman*, 132 Idaho 424, 425, 974 P.2d 70, 71 n. 1 (1999); *Lamb v. Manweiler*, 129 Idaho 269, 272, 923 P.2d 976, 979 (1996); *Marias v. Marano*, 120 Idaho 11, 13, 813 P.2d 350, 352 (1991); *Johnson v. Jones*, 103 Idaho 702, 706, 652 P.2d 650, 654 (1982). The fourth element could be read as requiring an attorney-client relationship between the plaintiff and the defendant attorney. In none of these cases, however, were we asked to decide whether or in what

circumstances a person who was not a client of the defendant attorney could have a malpractice claim against the attorney. We now address that issue.

As a general rule, an attorney will be held liable for negligence only to his or her client and not to someone with whom the attorney does not have an attorney-client relationship. *See e.g., Wick v. Eismann,* 122 Idaho 698, 838 P.2d 301 (1992) (an attorney who represented the corporation could be liable to a shareholder for legal malpractice if the attorney also represented the shareholder in his individual capacity); *Allen v. Stoker,* 138 Idaho 265, 61 P.3d 622 (Ct.App.2002) (heirs do not have a cause of action for negligence against the attorney who represented the personal representative of the estate because the attorney does not owe a duty to them). No liability arises from the law of torts unless the defendant owes a duty to the defendant. *Udy v. Custer County,* 136 Idaho 386, 34 P.3d 1069 (2001). An attorney's duty arises out of the contract between the attorney and his or her client. *Johnson v. Jones,* 103 Idaho 702, 704, 652 P.2d 650, 652 (1982) ("The scope of an attorney's contractual duty to a client is defined by the purposes for which the attorney is retained."); *Fuller v. Wolters,* 119 Idaho 415, 807 P.2d 633 (1991) (tort of legal malpractice is also a breach of the attorney-client contract). Therefore, the general rule has been that an attorney-client relationship with the plaintiff is a prerequisite for holding the attorney liable for negligence in the performance of legal services.

The trend in recent years, however, has been some relaxation in the privity requirement. 7 AM. JUR. 2D *Attorneys at Law* § 249 (1997). In *Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16 (1958), the California Supreme Court replaced the privity requirement with a multi-factor balancing approach in a case involving the allegedly negligent drafting of a will by a nonlawyer. The factors listed were the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury

suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm. The California Supreme Court soon applied the balancing test enunciated in *Biakanja* to a case in which heirs sued the attorney who drafted a will alleging that their inheritance was reduced because of the attorney's negligence. *Lucas v. Hamm,* 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961). Other courts have relaxed the privity requirement based upon a third-party-beneficiary analysis. For example, in *Pelham v. Griesheimer,* 92 Ill.2d 13, 64 Ill.Dec. 544, 440 N.E.2d 96, 99–100 (1982) (citations omitted), the Illinois Supreme Court held as follows:

> While privity of contract has been abolished in many areas of tort law, the concern is still that liability for negligence not extend to an unlimited and unknown number of potential plaintiffs. In the area of legal malpractice the attorney's obligations to his client must remain paramount. In such cases the best approach is that the plaintiffs must allege and prove facts demonstrating that they are in the nature of third-party intended beneficiaries of the relationship between the client and the attorney in order to recover in tort. By this we mean that to establish a duty owed by the defendant attorney to the nonclient the nonclient must allege and prove that the intent of the client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship.

At least one court has combined both the multi-factor balancing test and the third party liability test to determine whether an attorney owes a duty to a nonclient. *Trask v. Butler,* 123 Wash.2d 835, 872 P.2d 1080 (1994). A few courts continue to adhere to the privity requirement. In *Barcelo v. Elliott,* 923 S.W.2d 575, 578–79 (Tex.1996), the Texas Supreme Court stated:

> In sum, we are unable to craft a bright-line rule that allows a lawsuit to proceed where alleged malpractice causes a will or trust to fail in a manner that casts no real doubt on the testator's intentions, while prohibiting actions in other situations. We believe the greater good is served by preserving a bright-line privity rule which de-

nies a cause of action to all beneficiaries whom the attorney did not represent. This will ensure that attorneys may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation.

In dissent, Justice Cornyn stated, "By refusing to recognize a lawyer's duty to beneficiaries of a will, the Court embraces a rule recognized in only four states, while simultaneously rejecting the rule in an overwhelming majority of jurisdictions." *Id.* at 579 (footnotes omitted).

■ The existence of a duty is a question of law for this Court. *Turpen v. Granieri,* 133 Idaho 244, 985 P.2d 669 (1999). In deciding whether to recognize a new duty or extend a duty beyond the scope previously imposed, this Court engages in a balance-of-the-harms test. *Vincent v. Safeco Ins. Co. of Am.,* 136 Idaho 107, 29 P.3d 943 (2001). That test involves the consideration of policy and the weighing of factors, which include: the foreseeability of the harm to the plaintiff; the degree of certainty that the plaintiff suffered injury; the closeness of the connection between the defendant's conduct and the injury suffered; the moral blame attached to the defendant's conduct; the policy of preventing future harm; the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach; and the availability, cost, and prevalence of insurance for the risk involved. *Id.*

■ Considering those factors, we hold that an attorney preparing testamentary instruments owes a duty to the beneficiaries named or identified therein to prepare such instruments, and if requested by the testator to have them properly executed, so as to effectuate the testator's intent as expressed in the testamentary instruments. If, as a proximate result of the attorney's professional negligence, the testator's intent as expressed in the testamentary instruments is frustrated in whole or in part and the beneficiary's interest in the estate is either lost, diminished, or unrealized, the attorney would be liable to the beneficiary harmed. The testamentary instruments from which the testator's intent is to be ascertained would

not include any will, codicil, or other instrument that had been revoked.

■ One of the main purposes for preparing testamentary instruments is to provide for the transfer of property to those named in such instruments. The harm to those intended beneficiaries in the event of negligent preparation is clearly foreseeable. When, as a result of the attorney's negligence, the estate is not distributed in accordance with the testator's intent as expressed in the testamentary instruments, there is a high degree of certainty that those intended beneficiaries will be harmed. In that circumstance, the connection between the defendant's conduct and the harm is direct. There is sufficient moral blame attached to the negligent preparation or execution of testamentary instruments to impose liability. Imposing such duty may also prevent future harm by creating an incentive to prepare such instruments carefully because otherwise there would be no liability for the negligent drafting of such instruments. Finally, extending the duty to this degree would not unduly increase the burden upon attorneys to use care when drafting testamentary instruments, and insurance is readily available to cover such risk.

■ Our extension of the attorney's duty is very limited. It does not extend to beneficiaries not named or identified in the testamentary instruments. The attorney has no duty to insure that persons who would normally be the objects of the testator's affection are included as beneficiaries in the testamentary instruments. Someone who has the mental capacity to make a valid will also knows the names and identities of the persons who are the objects of his or her bounty and would know whether or not such persons are included as beneficiaries under the testamentary instruments before executing them. The attorney likewise has no duty to see that the testator distributes his or her property among the named beneficiaries in any particular manner. Again, a testator who has sufficient mental capacity to make a valid will can also understand how his or her property will be distributed under the testamentary documents. The attor-

ney's duty to his or her client must remain paramount. An attorney preparing a document that revokes or amends a client's existing testamentary instrument(s) has no duty to the beneficiaries named or identified in such instruments to notify them, consult with them, or in any way dissuade the testator from eliminating or reducing their share of his or her estate. Likewise, that attorney could not be held liable to such beneficiaries based upon their assertion that the testator would not have intended to revoke such instrument(s). This extension of an attorney's duty will not subject attorneys to lawsuits by persons who simply did not receive what they believed was their fair share of the testator's estate, or who simply did not receive in the testamentary instruments what they understood the testator had stated or indicated they would receive.

## IV. CONCLUSION

A direct attorney-client relationship is required to exist between the plaintiff and the attorney-defendant in a legal malpractice action except in this very narrow circumstance. An attorney preparing testamentary instruments owes a duty to the beneficiaries named or identified therein to prepare such instruments, and if requested by the testator to have them properly executed, so as to effectuate the testator's intent as expressed in the testamentary instruments. If, as a proximate result of the attorney's professional negligence, the testator's intent as expressed in the testamentary instruments is frustrated in whole or in part and the beneficiary's interest in the estate is either lost, diminished, or unrealized, the attorney would be liable to the beneficiary harmed even though the attorney did not have a direct attorney-client relationship with that beneficiary.

Chief Justice TROUT, and Justices SCHROEDER, KIDWELL and BURDICK concur.