J. JONES, J.,
specially concurring.
I concur in the Court’s opinion but write to make some additional observations regarding the matters at issue.
Characterizing a breach of duty action against an attorney has never been easy because, by definition, an attorney-client relationship arises out of some form of contract, but a lawyer’s duty of care, which by implication becomes a part of that contract, is not necessarily spelled out in the contract terms agreed upon by the parties. A lawyer’s duty to a client is established by professional obligations developed by the Idaho State Bar and this Court. The contour's of an Idaho lawyer’s duty of care are generally spelled out in the Idaho Rules of Professional Conduct (I.R.P.C.). “An attorney’s duty arises out of the contract between the attorney and his or her client.” Harrigfeld v. Hancock, 140 Idaho 134, 137, 90 P.3d 884, 887 (2004). The things an attorney is obligated to do for a client depend on the type of matter or proceeding that the attorney undertakes for the client. The attorney is obligated to observe the duty of care attendant to such matter or proceeding. An attorney may not make a contract with the client to limit compliance with his duty of care, except as authorized by the I.R.P.C., such as obtaining informed consent to reveal confidential client information (I.R.P.C. 1.6(a)) or obtaining informed consent to represent clients with conflicting interests (I.R.P.C. 1.7(b)(4)).
As the Court notes in its Opinion, a lawyer can agree to do things or perform tasks above and beyond those provided for in, and not prohibited by, the I.R.P.C. Such additional undertakings are not required by the I.R.P.C. or the lawyer’s general duty of care and, therefore, are strictly contractual in nature. Such undertakings should be enforceable in a contract action and should survive the death of the client, just as any other contractual obligation.
For instance, I.R.P.C. 1.5 spells out the general requirements pertaining to fees charged by attorneys, but the rale does not spell out the specific provisions that must be written into the fee agreement. I.R.P.C. 1.5 states the general contours of what an attorney may do and what the attorney must not do. Violation of I.R.P.C. 1.5 may give rise to a tort action for malpractice. Violation of the specific terms of the agreement made between the lawyer and the client, where there is no claim that the provisions of I.R.P.C. 1.5 were violated, gives rise to a contract action.
In this case, the breach of contract claim is couched in terms of Owens having violated his contractual duty to Shelton. It is claimed that Owens failed to adequately inform Shelton about the operation of I.C. § 72-223, resulting in the fact that Shelton might end up with nothing if the Idaho State Insurance Fund exercised its full right of subrogation. Owens was required to adequately inform *623 Shelton in this regard but that duty arose under I.R.P.C. 1.4, rather than the Contingent Fee Contract (Contract) between the parties. In her briefing, Bishop also contends that Owens specifically violated paragraph 1 of the Contract, providing that, “[Owens’ firm] shall represent [Shelton] in said manner and do all things necessary, appropriate, or advisable, in regard thereto, whether the same be by representation in legal proceedings or otherwise.” However, these are obligations that Owens had under 1.R.P.C. 1.1 and 1.3. Since the alleged breaches of duty for which Shelton sued Owens are duties emanating from the I.R.P.C., the action is tort in nature.
Had Shelton sued Owens for violating the specific fee provisions of the Contract, whereby she agreed to pay Owens “forty percent (40%) of the gross recovery of any and all funds received in settlement or recovered after filing an action in any Court,” a contract action would have been appropriate. It appears from the record that Owens took a fee of $460,000 off of the top of the $1,150,000 settlement with Advance Care, representing 40% of the total settlement, along with reimbursing himself for $25,456.46 in costs. That left a total of $664,543.54, all of which (and much more) was subject to the Insurance Fund’s subrogated claim. Other counsel negotiated a reduction of the subrogated claim down to $270,000, leaving a balance of $394,543.54. There is no indication as to whether such other counsel charged an additional fee for such negotiation with the Insurance Fund, nor is there any indication as to whether any portion of the $460,000 fee obtained by Owens was taken into account as the Insurance Fund’s responsibility for the Advance Care settlement under a common fund theory. The record does not disclose how the balance was distributed. Shelton possibly could have made the claim that Owens’ fee should have been calculated on some amount other than $1,150,000, where he obviously knew that the subrogated claim would greatly exceed any amount left after he obtained the full amount of his fee. However, the contract claim pursued by Shelton, and then Bishop, did not involve this contractual question so no valid contact claim was presented on appeal.