# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47057

DAVID KALB, acting in the capacity of )
Conservator of BILLY KYSER, JR., an )
incapacitated person, ) Boise, August 2020 Term
)
)
    Plaintiff-Respondent, ) Opinion Filed: October 9, 2020
)
)
v. ) Melanie Gagnepain, Clerk
)
CRAIG R. WISE, a legal professional, )
)
    Defendant-Appellant. )
    _____ )

Appeal from the District Court of the First Judicial District of the State of Idaho, Boundary County. Barbara A. Buchanan, District Judge.

The district court's holding is <u>reversed</u> and the case is <u>remanded</u> with instructions to enter judgment in favor of Appellant. Costs on appeal are <u>awarded</u> to Appellant.

James, Vernon & Weeks, P.A., Coeur d'Alene, attorneys for Appellant. Susan Weeks argued.

Lake City Law Group, PLLC, Priest River, attorneys for Respondent. Jason Wing argued.

    _____

BEVAN, Justice

## I. NATURE OF THE CASE

Attorney Craig Wise appeals a district court's determination that he breached a duty of care owed to Billy Kyser, Jr., as a beneficiary of Carolyn Kyser's will. Wise represented Billy's mother, Carolyn, in divorce proceedings from Bill Kyser, Sr., and in preparing a will that bequeathed her entire estate in equal shares to Billy and his brother Brent Kyser. As part of the divorce proceedings, and before Carolyn's will was completed, Carolyn and Bill Sr. executed a property settlement agreement in which Bill Sr. and Carolyn agreed to retain sequential life estates in the family home, with the remainder going to Brent and Billy as tenants in common

1

upon the death of the last surviving parent. Wise prepared a deed memorializing the terms of the property settlement agreement. After Bill Sr. and Carolyn both passed away, Brent retained Wise to represent him as the personal representative of Carolyn's estate. Brent also hired Wise independently to prepare a quitclaim deed transferring Billy's interest in the home to Brent. Wise sent the deed to Billy, who then executed it. David Kalb, Billy's court-appointed conservator, then filed a malpractice suit against Wise. After a court trial, the district court held Wise breached the duty he owed to Billy as a beneficiary of Carolyn's will by preparing the deed because it frustrated Carolyn's testamentary intent that her estate be divided equally between her two sons.

We reverse the district court's legal determination that Wise owed Billy a duty of care when Wise was acting as counsel for the personal representative of Carolyn's estate, Brent. Although Wise owed Billy a duty of care in drafting and executing Carolyn's will, the district court impermissibly extended that duty by requiring that Wise ensure an asset outside the probate estate complied with Carolyn's intent in her will. We, therefore, remand with instructions to enter judgment for Wise.

## II. FACTUAL AND PROCEDURAL BACKGROUND

David Kalb is Billy's uncle and court-appointed conservator. Billy is around fifty years old but does not function at an adult level. Billy has speech problems, was born with a cleft palate, and has undergone several surgeries to correct it. Billy can move and walk, but has a very low mental capacity. Billy's mental development plateaued when he was in grade school and declined gradually in his 20s and 30s. At the time of trial, Billy's reading comprehension was at the second grade level. Billy's capacity to retain what he reads has also diminished over time.

Brent and Billy's parents, Carolyn and Bill Sr., divorced in 2001. After the divorce, Billy lived with his father for about two years and then lived exclusively with his mother until she died in 2011. Billy currently resides with family friends, Terri and Wendell Kuntz.

At all times relevant to these proceedings, Wise was a licensed Idaho attorney in Coeur d' Alene, Idaho. Wise obtained his law license on September 21, 1979, and was known as a general practitioner. Wise represented Carolyn in her divorce from Bill Sr. On February 15, 2002, Carolyn and Bill Sr. executed a property settlement agreement before a notary public. The property settlement agreement set forth the general manner in which Bill Sr. and Carolyn wished to devise their real property and mobile home:

2

As to the real property and mobile home, the parties agree to execute a Deed granting to Husband a life estate in and to said property. If any of the following conditions come into existence, the real property and mobile home shall go to Wife with her receiving a life estate with the same conditions being required of Wife as of Husband, whereafter the property shall go to the Husband and Wife's children (remainder interest), Billy E. Kyser, Jr. and Brent A. Kyser.

The real property and mobile home referenced in the property settlement agreement (identified hereafter as the "home") are the property at issue in the current case. Wise drafted the deed memorializing the property settlement agreement and sent it to Bill Sr.'s attorney, Paul Vogel, for review (the "2002 Deed").

Around the same time in 2002, Wise prepared Carolyn's last will and testament. Carolyn's will provided, in pertinent part:

I hereby devise and bequeath the entire of my estate to my children, Brent Kyser and Billy E. Kyser, Jr., in equal shares . . .

As to Billy E. Kyser, Jr.'s share of my estate, that portion of my estate shall be held in trust for distribution to him on the following terms:

(a) Brent Kyser shall serve as trustee, with my friend, Terri Kuntz, to serve as alternate trustee;

(b) The trustee shall retain possession of the respective portion of such principal and income and accumulate the income therefrom, or pay over or apply the whole or any part of such principal and income to said child, or for said child's support, maintenance, welfare, and education, as the trustee sees fit, and in the trustee's sole discretion; and

(c) That said trust shall not terminate until Billy's death, where at such time the remaining principal and income shall be distributed to Brent Kyser or his heirs.

At the time Wise prepared Carolyn's will and the 2002 Deed, he knew Billy was an adult, was at least physically disabled, was unable to work, and lived with his mother. Wise did not recall asking Carolyn for more elaboration on Billy's condition. The 2002 Deed was executed on March 28, 2002, and recorded on April 2, 2002. Carolyn's will was executed on March 29, 2002.

Bill Sr. died in 2004. Upon his death, Carolyn acquired her life estate in the home under the 2002 Deed. Carolyn died in June 2011. Upon her death, the remainder interest in the home vested in Brent and Billy as tenants in common. Soon after, Wise filed an application for informal probate of will and informal appointment of personal representative, with Brent appointed in that role. Wise served as the attorney of record for Brent in the probate case from

3

July 12, 2011 through July 27, 2015. Brent also hired Wise independently in August 2012 to draft a quitclaim deed, whereby Billy's interest in the home would be conveyed to Brent.

Wise drafted the quitclaim deed conveying Billy's one-half remainder interest in the home to Brent (the "2012 Deed"). On August 24, 2012, Wise sent the following letter to Billy with a copy of the deed:

Re: Quitclaim Deed

Dear Billy:

I represent your brother, Brent Kyser, in legal matters, including the administration of your mother's estate. You and your brother are now the owners of your parent's property in Boundary County, located in Section 26, including the mobile home.

Brent desires that at this time you deed your interest in the property over to him. If you agree, I have prepared a draft Quitclaim Deed for your review, enclosed. Please review and sign before a notary public, and thereafter either return to me, or forward on to your brother.

Please contact me if you have any questions or comments.

Sincerely,

Craig R. Wise, P.A.

Enclosures
cc:   Brent Kyser

Billy signed the 2012 Deed before a notary public in late August 2012, and Wise had the deed recorded on September 22, 2012. Wise never had any discussions with Billy, nor did he advise Billy to obtain independent counsel to advise him about his rights. There was no consideration exchanged for the transfer of property brought about by the 2012 Deed.

Since Carolyn's death, the property has been occupied by Brent's friends. The mobile home on the property burnt down around 2017. Neither Billy nor Kalb received any insurance proceeds from the incident, although there was no evidence presented at trial that there were insurance proceeds from the incident. After the mobile home burnt down, the tenants moved a fifth wheel into the shop on the property and now live there. Neither Billy nor Kalb has received any rental proceeds from the occupation of the property.

On August 28, 2017, Kalb, acting on behalf of Billy, initiated proceedings against Wise alleging legal malpractice. Wise subsequently filed a motion for summary judgment, arguing that he did not have an attorney-client relationship with Billy, thus, he owed him no duty in drafting

4

the 2012 Deed. The district court denied Wise's motion for summary judgment, finding there were genuine issues of material fact regarding whether Wise breached his duty to Billy by: (1) preparing the 2012 Deed; (2) instructing Billy to sign it; and (3) having it recorded. The district court also found issues of fact about whether, as a proximate result of such breach, Carolyn's intent as expressed in her will was frustrated in whole or in part, leading to Billy's interest in the estate being either lost, diminished, or unrealized.

The case proceeded to a two-day bench trial, after which the district court entered its memorandum decision and order in favor of Kalb, acting in the capacity of conservator for Billy. Citing *Harrigfeld v. Hancock*, 140 Idaho 134, 90 P.3d 884 (2004), the court determined that as the attorney who prepared Carolyn's will, Wise owed Billy a duty to prepare the will and to have it properly executed to effectuate Carolyn's intent as expressed in her will: to devise and bequeath the entire of her estate to her children, Brent and Billy, in equal shares, and to have Billy's share held in trust for distribution to him throughout his lifetime. The court then held Wise's preparation of the 2012 Deed was a breach of this duty. The district court awarded Billy $51,170.00 plus costs in an amount to be determined. The award stemmed from the court's finding that Billy was entitled to one-half of the value of the assessed property[1], plus $600 per month in rent for the 56 months before the mobile home burnt down, and $125 per month in rent for the 22 months after the home burnt down. The district court entered judgment accordingly. Wise timely appealed to this Court.

### III. ISSUES ON APPEAL

1. Did the district court impermissibly expand the duty of care established in *Harrigfeld v. Hancock*?

2. Did the district court err in finding Wise breached the standard of care owed to Billy?

3. Did the district court err in finding Wise's alleged breach of his duty of care proximately caused Billy's claimed injury?

4. Is Kalb entitled to attorney fees on appeal?

### IV. STANDARD OF REVIEW

Following a bench trial, a trial court's conclusions are limited on appeal to a determination of whether the evidence supports the trial court's findings of fact, and whether those findings support the conclusions of law. *Green River Ranches, LLC v. Silva Land Co.,*

---

[1] The property was assessed with a total value of $65,990.00.

*LLC*, 162 Idaho 385, 389, 397 P.3d 1144, 1148 (2017) (citing *Oregon Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co. of Idaho*, 148 Idaho 47, 50, 218 P.3d 391, 394 (2009)). This Court will "liberally construe the trial court's findings of fact in favor of the judgment entered, as it is within the province of the trial court to weigh conflicting evidence and testimony and judge the credibility of witnesses." *Id.* This Court will not disturb findings of fact on appeal that are supported by substantial and competent evidence, even if there is conflicting evidence at trial. *Id.* (citing *Panike & Sons Farms, Inc. v. Smith*, 147 Idaho 562, 565–66, 212 P.3d 992, 995–96 (2009)). Only erroneous findings will be set aside. *Id.* at 565, 212 P.3d at 995.

Conclusions of law are freely reviewed by this Court, drawing its own conclusions from the facts presented in the record. *Id.* (citing *Griffith v. Clear Lakes Trout Co*., 146 Idaho 613, 619, 200 P.3d 1162, 1168 (2009)). The existence of a duty is a question of law. *Harrigfeld v. Hancock*, 140 Idaho 134, 138, 90 P.3d 884, 888 (2004) (citing *Turpen v. Granieri*, 133 Idaho 244, 985 P.2d 669 (1999)). In deciding whether to recognize a new duty or extend a duty beyond the scope previously imposed, this Court engages in a balance-of-the-harms test. *Id.* (citing *Vincent v. Safeco Ins. Co. of Am.*, 136 Idaho 107, 29 P.3d 943 (2001)). That test involves considering policy and the weighing of factors, *id.*, which will be referenced in more detail below.

## V. ANALYSIS

### A. The district court erred in holding that Wise owed Billy a duty of care in preparing the 2012 Deed.

The crux of this appeal is whether Wise committed legal malpractice by breaching a duty of care owed to Billy. In general, the elements of a legal malpractice action are: "(a) the existence of an attorney-client relationship; (b) the existence of a duty on the part of the lawyer; (c) failure to perform the duty; and (d) the negligence of the lawyer must have been a proximate cause of the damage to the client. *Harrigfeld*, 140 Idaho at 136, 90 P.3d at 886 (quoting *Johnson v. Jones*, 103 Idaho 702, 706–07, 652 P.2d 650, 654–55 (1982)). Regarding the first required element, the general rule in Idaho is that "an attorney will be held liable for negligence only to his or her client and not to someone with whom the attorney does not have an attorney-client relationship." *Id*. at 137, 90 P.3d at 887. However, in *Harrigfeld,* this Court extended an attorney's duty to non-clients who are named or identified as beneficiaries in a testamentary instrument. *Id*. at 138, 90 P.3d at 888. The Court held that the duty included, if requested,

6

insuring that the testamentary instruments be properly executed, so as to "effectuate the testator's intent as expressed in the testamentary instruments." *Id*. "If, as a proximate result of the attorney's professional negligence, the testator's intent as expressed in the testamentary instruments is frustrated in whole or in part and the beneficiary's interest in the estate is either lost, diminished, or unrealized, the attorney would be liable to the beneficiary harmed." *Id*.

Wise, as the attorney who prepared Carolyn's will, owed her beneficiaries, Billy and Brent, a duty "to prepare [*testamentary*] instruments, and if requested by [Carolyn] to have them properly executed, so as to effectuate [Carolyn's] intent as expressed in the testamentary instruments." *Id*. The question before us is whether the 2002 Deed constituted one of those "other testamentary instruments" contemplated in *Harrigfeld* even though the district court held it was not a testamentary instrument.[2] Kalb did not appeal the district court's holding that the 2002 Deed was not a testamentary instrument. Instead, Kalb maintains that the "other instruments" of Carolyn's estate planning included the 2002 Deed. Kalb argues Wise had a duty to effectuate the intent of the testator with respect to that instrument.

Idaho Code section 15-2-603 provides that "[t]he intention of a testator as expressed in his will controls the legal effect of his dispositions." If the language of a will is clear and unambiguous, the intent of the testator derives from the will as it reads on its face. *Wilkins v. Wilkins*, 137 Idaho 315, 319, 48 P.3d 644, 648 (2002). "[I]n construing the provisions of a will to ascertain the meaning of a testator, the cardinal rule of construction is to ascertain the testator's intent; and . . . [t]his intent is to be ascertained from a full view of everything within the four corners of the instrument." *Id*. (internal citations omitted).

The district court held that Carolyn's will was clear and unambiguous and, looking within the four corners of the will, Carolyn's intent was to devise and bequeath her entire estate to Brent and Billy equally, with Billy's portion to be held in trust. As a result, the district court held that Wise breached his duty to Billy, as a beneficiary of Carolyn's will, by his conduct ten years later when he prepared the 2012 quitclaim deed, and by contacting Billy directly to get Billy to sign-over his interest to his brother.

Wise argues that because the home was not subject to administration as part of Carolyn's estate, Wise's preparation of the 2002 and 2012 deeds did not involve drafting "testamentary

---

[2] Initially, the district court held that the 2002 Deed was a testamentary instrument along with Carolyn's will. Yet after trial, the district court changed course and held Carolyn's will was the only testamentary instrument.

instruments" for Carolyn. Wise also contends that the 2012 Deed did not frustrate Carolyn's testamentary intent to divide her estate equally between Brent and Billy since the property was not part of her estate corpus. We agree.

Idaho Code section 15-1-201(16) defines "estate" as "all property of the decedent, including community property of the surviving spouse subject to administration, property of trusts, and property of any other person whose affairs are subject to this code as it exists from time to time during administration." Here, the 2002 Deed granted Bill Sr. and Carolyn sequential life estates with the remainder interest going to Brent and Billy as tenants in common. A life estate terminates on the death of the holder of the life estate, and then the remainder takes effect. I.C. § 55-203. The home was thus never part of Carolyn's probate estate. It passed to Billy and Brent immediately upon Carolyn's death and the property was transferred automatically, outside Carolyn's estate, with no involvement by the probate court.

The question remains, what of the "balance-of-the-harms" test this Court recognized in *Harrigfeld*, and how might it apply to the legal question before us? The test "involves the consideration of policy and the weighing of factors," 140 Idaho 134, 138, 90 P.3d 884, 888, which include

> the foreseeability of the harm to the plaintiff; the degree of certainty that the plaintiff suffered injury; the closeness of the connection between the defendant's conduct and the injury suffered; the moral blame attached to the defendant's conduct; the policy of preventing future harm; the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach; and the availability, cost, and prevalence of insurance for the risk involved.

*Id*.

Applying these factors here, we conclude that extending the duty of an attorney to non-clients affected by non-testamentary documents (deeds) extends the holding of *Harrigfeld* too far. One may rightly question Wise's "moral blame" as part of this test – indeed the district court did so. We make no conclusion regarding Wise's professional responsibility here today; however, Idaho Rules of Professional Conduct 1.7(a)(2) and 4.3 may be relevant for an inquiry by the Idaho State Bar as to Wise's ethically questionable actions in (1) directly contacting Carolyn's unrepresented and severely disabled son, (2) having that son transfer his interest in the real property to Wise's client, (3) failing to advise Billy to seek the advice or intervention of

8

independent counsel, and (4) failing to consult Billy's conservator before performing any of these acts.

Even so, an alleged violation of any ethical rules, and the moral blame attendant to such conduct, is insufficient alone to extend a duty in tort from Wise to Billy under the balance-of-the-harms test. The remaining factors of the test simply do not support extending a duty to Wise's conduct in preparing *non-testamentary instruments* – the 2002 Deed and the 2012 Deed – that ultimately transferred Billy's interests in the home to his brother. While the district court found this action violated a duty owed by Wise to Billy because it frustrated Carolyn's intent as expressed in her will, we disagree. Wise's preparation of a deed as a non-testamentary document ten years after the will was drafted, and his contact with Billy to obtain his signature, did not violate a duty Wise owed to Billy as a beneficiary of Carolyn's will since the deed did not concern an asset of her estate. Wise's duty at that point was owed to Brent as the personal representative of the estate and to Brent individually in connection with the preparation of the deed. Billy was a non-client, and Wise owed him no duty of care. *See Allen v. Stoker*, 138 Idaho 265, 267, 61 P.3d 622, 624 (Ct. App. 2002) (the attorney for the personal representative owes no duty to the heirs of the decedent).

Ultimately, the "other instruments" considered in *Harrigfeld* were codicils, directly related to the testator's will drafted by the attorney. Here, even though the 2002 Deed was prepared during the same timeframe as Carolyn's will, it was executed separately and was therefore separate from the assets devised in that will. The deed was prepared to carry out the property settlement agreement reached between Carolyn and Bill Sr. as part of their divorce. The deed was not a testamentary instrument. We, therefore, reiterate that *Harrigfeld* stands for the rule that a lawyer's duty of care to beneficiaries is limited to the drafting and execution of testamentary instruments that are part of the will or trust at issue. The quitclaim deed was simply not such an instrument, nor was the 2002 Deed. We decline to extend the lawyer's duty to beneficiaries to include the transfer of assets which pass outside the probate estate. Although the 2012 Deed conveyed Billy's one-half property interest to Brent, that transfer was independent of and unrelated to the testamentary instrument Wise drafted for Carolyn. Wise only owed Billy a duty of care in drafting and executing Carolyn's will and any codicils attached to it. Thus, the district court erred in holding that Wise owed Billy a duty.

**B.      We decline to award attorney fees on appeal.**

Kalb requests attorney fees under Idaho Code section 12-121, arguing that the duty established under *Harrigfeld* has been long established; therefore, Wise's appeal was brought or pursued frivolously, unreasonably or without foundation. Kalb is not the prevailing party, thus, attorney fees under section 12-121 are not appropriate. Further, whether an attorney has a duty to ensure an asset outside the probate estate complies with the testator's intent is a novel legal question that has not been addressed by this Court. Attorney fees under section 12-121 are not warranted where a novel legal question is presented. *McCann v. McCann*, 152 Idaho 809, 823, 275 P.3d 824, 838 (2012) (citing *Campbell v. Kildew*, 141 Idaho 640, 651, 115 P.3d 731, 742 (2005)).

## VI. CONCLUSION

We reverse the district court's holding that Wise owed Billy a duty of care in preparing the 2012 Deed because it concerned property outside Carolyn's testamentary estate. We award costs to Wise on appeal as the prevailing party.

Chief Justice BURDICK and Justices BRODY, STEGNER and MOELLER, CONCUR.