# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48825

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, November 2021 Term |
| | ) | |
| v. | ) | Opinion Filed: May 11, 2022 |
| | ) | |
| MARK CHARLES WILSON, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Custer County. Joel E. Tingey, District Judge.

The judgment of the district court is affirmed.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant Mark Charles Wilson. Kimberly A. Coster argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent State of Idaho. Andrew V. Wake argued.

———————————————

STEGNER, Justice.

Mark Wilson was charged in Custer County with unlawful possession of a firearm in violation of Idaho Code section 18-3316. The charge also carried with it a persistent violator sentencing enhancement. In a bifurcated trial, a jury first found Wilson guilty of unlawful possession of a firearm. The jury then found Wilson subject to an enhanced sentence due to his status as a persistent violator. Wilson appealed to the Idaho Court of Appeals, arguing that the State had failed to present sufficient evidence that he had been convicted of at least one previous felony at the time he possessed a firearm. Wilson also argued that the State failed to present sufficient evidence that he had been convicted of two prior felonies, an essential prerequisite of the persistent violator enhancement. The Court of Appeals affirmed Wilson's convictions. Wilson petitioned this Court for review, which we granted. For the reasons set forth below, we affirm Wilson's convictions.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2019, Mark Wilson was convicted of first degree murder for shooting his housemate, Patricia Brown, in Challis, Idaho, with a firearm he had borrowed from a neighbor. In a separate case, Wilson was also charged with unlawful possession of a firearm in violation of Idaho Code section 18-3316, alleging he had previously been convicted of a felony. The firearm in question was the same firearm used in the murder of Brown. Wilson waived a preliminary hearing and was bound over to district court. An Information was filed charging Wilson with unlawful possession of a firearm in violation of Idaho Code section 18-3316. Wilson pleaded not guilty. The case was set for trial.

Wilson moved for a change of venue in the unlawful possession of a firearm case, arguing that "[i]t would be hard to find a potential juror in Custer County who has not heard about the death of Patricia Brown and the arrest of Mark Wilson, and talked to someone about the case, and formed an opinion about what happened." Wilson noted that a motion to change venue had been granted in the first degree murder case, and would be appropriate in this case for similar reasons. The district court denied Wilson's motion.

In response to the guilty verdict in the murder case, the State filed an Amended Information in the unlawful possession of a firearm case, this time including a persistent violator sentencing enhancement. The State alleged Wilson had committed a new felony (felon in possession of a firearm), as a result of his possession of a firearm and having been convicted of two prior felonies: (1) battery with intent to commit a serious felony in Custer County in 2006 and (2) first degree murder (of Patricia Brown) in Custer County in 2019. Wilson filed another motion to change venue in the unlawful possession case, or in the alternative a motion to continue the trial, this time arguing that it would be difficult to find an impartial jury in Custer County due to the recent guilty verdict in the murder case. Wilson also noted that he was set to be sentenced on the murder conviction on August 8, 2019, and his trial for the unlawful possession charge was set for August 21, 2019. The district court granted the motion to change venue, ordering that the trial take place in Bonneville County. The district court also continued the unlawful possession trial until September 18, 2019, to allow media attention to abate.

Wilson filed a motion to dismiss the persistent violator sentencing enhancement, arguing that the newly charged felony (unlawful possession of a firearm) and one of the prior two felonies (first degree murder) had both arisen out of the same incident. Wilson contended that because these

two alleged crimes had occurred as part of the same event, the State should have charged both simultaneously.

At the hearing, the district court declined to rule on Wilson's motion to dismiss without further briefing. The parties discussed the propriety of including the persistent violator enhancement in the Information for an action that occurred as part of the same factual circumstances as the murder. The State then moved to file a Second Amended Information, which the district court permitted. The State's Second Amended Information removed the murder of Patricia Brown as a prior felony as a basis for seeking the sentencing enhancement, and instead alleged that Wilson's two prior felony convictions were (1) Battery with Intent to Commit a Serious Felony in Custer County (2006) and (2) Criminal Sexual Conduct, Second Degree in Jackson County, Michigan (1990).

In a motion in limine, Wilson admitted to "all of the material elements relating to the charge of Unlawful[] Possession of a Firearm with the exception of the element that he previously had been convicted of a felony." Wilson moved to exclude any evidence not related to his alleged prior felony convictions. The district court accepted the admission and granted Wilson's motion. Thus, the only issue for trial on the charge of felon in possession of a firearm was whether Wilson had been previously convicted of a felony. The case proceeded to a bifurcated trial. During phase one, the jury would decide whether Wilson had been convicted of *one* prior felony and was therefore guilty of unlawful possession of a firearm. If the jury found Wilson guilty, then the trial would proceed to its second phase, in which the jury would decide whether Wilson had been convicted of *two* prior felonies and would, therefore, be subject to an enhanced sentence because he would be a persistent violator under Idaho Code section 19-2514.

During the first phase of trial, the State called Custer County Sheriff's Deputy Levi Maydole as its first and only witness; Maydole testified that Wilson was charged with "attempted strangulation" in Custer County in 2006. The State then sought to admit a judgment of conviction for a "Mark Charles Wilson" for Battery with Intent to Commit a Serious Felony in Custer County in 2006. The district court admitted the exhibit as a certified public record over Wilson's objections asserting hearsay and lack of foundation. The State next sought to admit another "Judgment of Sentence" evidencing a 1990 conviction of "Mark Charles Wilson" of Criminal Sexual Conduct, 2nd Degree, from Jackson County, Michigan. The district court admitted the exhibit over the same objections by Wilson.

3

Finally, the State sought to admit an excerpt of the Michigan Penal Code, specifically Section 750.520c, Criminal Sexual Conduct in the Second Degree. Wilson objected, arguing that the copy produced by the State represented the *current* state of Michigan law, but that the statute had been amended multiple times since Wilson's conviction in 1990. The district court admitted the exhibit, stating

> I think the [c]ourt's entitled to take judicial notice of state statutes, including Penal Code. I recognize that there's an issue as to weight if it doesn't cover the time period in question, but I'll let that be part of the argument that is going to the jury about the weight of the document. And [there] does not appear to be any genuine dispute that that's the current code section.

After cross-examination and re-direct examination of Maydole, the State rested. Wilson orally moved for a judgment of acquittal, arguing that the State had "failed to show sufficient evidence to carry its burden of proof beyond a reasonable doubt, [1] that Wilson was the same Mark Wilson convicted in 1990 in Michigan, and [2], that it was a felony." The district court denied Wilson's motion. The district court then concluded that whether the Michigan statute was a felony was a question of law for the district court to decide. Wilson's counsel asked the district court if he would be allowed to "argue to the jury that there hasn't been evidence put in that it is a felony." The district court responded, "no, you can't because I've made that finding . . . that the Michigan statute is a felony and can be the basis for finding unlawful possession of a firearm by a felon." The district court further concluded that criminal sexual conduct in the second degree "was a felony at the time of the conviction."

Wilson did not present any evidence and the case proceeded to closing arguments. The first verdict form the jury was given asked only whether Wilson was guilty of unlawful possession of a firearm; the jury found Wilson guilty on that charge. Because the jury found Wilson guilty of unlawful possession of a firearm, the trial proceeded to its second phase regarding the persistent violator sentencing enhancement. Neither the State nor Wilson presented any additional evidence during this second phase. The jury returned a verdict finding that Wilson had been convicted of (1) Criminal Sexual Conduct, 2nd Degree, and (2) Battery with Intent to Commit a Serious Felony. Thus, the jury found that Wilson was a persistent violator and, therefore, subject to a sentencing enhancement.

Wilson moved for a judgment of acquittal regarding the persistent violator sentencing enhancement pursuant to Idaho Criminal Rule 29. Wilson argued that (1) the jury should have made the determination whether the Michigan conviction was a felony, and (2) that the State failed

4

to meet its burden of proving the Michigan conviction was a felony. At the hearing, the district court denied the motion for a judgment of acquittal, but *sua sponte* considered Wilson's motion as an alternative motion for a new trial, conceding that

> I think that was reversible error on my part when I made the decision as a matter of law that the violation of the Michigan statute was a felony. . . . The case law I've seen indicates that is part of the burden of proof on the State and something that the trier of fact needs to determine.

The district court then vacated Wilson's conviction on the persistent violator enhancement and ordered a new trial.

Wilson declined to proceed with a new trial, and instead entered a conditional guilty plea to the persistent violator enhancement, reserving his right to appeal. The case proceeded to sentencing. The district court sentenced Wilson to three years fixed, followed by twelve years indeterminate, for a total of fifteen years. The district court ordered this sentence to run consecutively to Wilson's sentence on the murder conviction. Wilson timely appealed his convictions to the Idaho Court of Appeals, which affirmed. *See State v. Wilson*, No. 47553, 2021 WL 668012 (Idaho Ct. App. Feb. 22, 2021). This Court granted review.

## II.    STANDARD OF REVIEW

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Hoskins*, 165 Idaho 217, 220, 443 P.3d 231, 234 (2019) (quoting *State v. Daly*, 161 Idaho 925, 927, 393 P.3d 585, 587 (2017)). "Appellate review of the sufficiency of the evidence is limited in scope." *State v. Clark*, 168 Idaho 503, 506, 484 P.3d 187, 190 (2021) (quoting *State v. Gomez-Alas*, 167 Idaho 857, 861, 477 P.3d 911, 915 (2020)).

> On a complaint of insufficiency of evidence, the appropriate standard of review is whether there is substantial and competent evidence to support the jury's verdict. *State v. Aragon*, 107 Idaho 358, 366, 690 P.2d 293, 301 (1984). Further, the function of the appellate court is to examine the supporting evidence, not to reweigh the significance of the evidence as it relates to specific elements. *Id.* All facts and inferences are to be construed in favor of upholding the lower court's decision. *Id. See also State v. Filson*, 101 Idaho 381, 386, 613 P.2d 938, 943 (1980) (where there is competent evidence to sustain a verdict, the reviewing court will not reweigh that evidence).

*State v. Bush*, 131 Idaho 22, 32–33, 951 P.2d 1249, 1259–60 (1997).

"[T]he standard of review for a motion for judgment of acquittal under I.C.R. 29(c) is whether there was substantial evidence upon which a trier of fact could have found the essential

5

elements of the crime beyond a reasonable doubt." *State v. Hoyle*, 140 Idaho 679, 684, 99 P.3d 1069, 1074 (2004).[1]

## III. ANALYSIS

### A. The State presented sufficient evidence that Wilson had previously been convicted of at least one felony to support the unlawful possession of a firearm charge.

Because Wilson admitted that he was in possession of a firearm, the only issue for trial was whether Wilson had previously been convicted of a felony. In the first stage of the bifurcated trial, the jury convicted Wilson of unlawful possession of a firearm in violation of Idaho Code section 18-3316, concluding that he had been convicted of at least one prior felony when he possessed the firearm.

On appeal, Wilson argues that the State failed to meet its burden because it failed to produce legally sufficient evidence that Wilson was a convicted felon at the time he possessed the firearm. Wilson contends that Maydole—the State's only witness—did not have any independent knowledge that Wilson was the same Mark Charles Wilson that had been convicted of battery in Custer County in 2006 or of criminal sexual conduct in Michigan in 1990. Wilson asserts that the State did not present evidence of Wilson's identity other than his name. Although Maydole testified to Wilson's purported birthdate, he had "no personal knowledge" of Wilson's birthdate and admitted that he only knew the date because he had just read it from the State's exhibit. Wilson argues that Maydole's testimony did not connect him to either judgment of conviction presented by the State.

In response, the State argues that, looking only at the Idaho conviction, the evidence was sufficient to prove that Wilson had previously been convicted of a felony. The State points to the certified copy of the Judgment of Conviction from Custer County and argues that it introduced "considerably more" evidence than just Wilson's name. The State relies solely on the testimony

---

[1] Wilson aptly points out a typographical error in this Court's enunciation of the standard of review on a judgment of acquittal. This Court's opinion in *State v. Clark*, 161 Idaho 372, 374, 386 P.3d 895, 897 (2016), incorrectly describes the standard of review as follows: "In reviewing the denial of a motion for judgment of acquittal, the appellate court must independently consider the evidence in the record and determine whether a reasonable mind could conclude that the defendant's guilt as to such material *evidence* of the offense was proven beyond a reasonable doubt." *Id.* (Italics added.) *Clark* quotes the Court's opinion in *State v. Mercer*, 143 Idaho 108, 109, 138 P.3d 308, 309 (2006), which quotes our opinion in *State v. Grube*, 126 Idaho 377, 386, 883 P.2d 1069, 1078 (1994). *Grube* cites to the Idaho Court of Appeals opinion *State v. Printz*, which correctly sets forth the standard of review: "Review of a denial of a motion for judgment of acquittal requires the appellate court to independently consider the evidence in the record and determine whether a reasonable mind would conclude that the defendant's guilt as to each material *element* of the offense was proven beyond a reasonable doubt." 115 Idaho 566, 567, 768 P.2d 829, 830 (Ct. App. 1989) (italics added).

of Maydole, who worked at the Custer County Sheriff's Department in 2005 and 2006, contending that Maydole personally knew Wilson and that he had been convicted of a felony. The State refutes Wilson's claim that Maydole had no personal knowledge of Wilson's birth date, asserting that Maydole merely did not know his birth date "off the top of his head," but had reviewed Wilson's booking information prior to testifying and relied on that memory. The State concludes that the evidence, taken together, "was more than sufficient for a reasonable jury to conclude—as this one did—that Wilson was the convicted defendant in the 2006 Idaho case."

Idaho Code section 18-3316 provides:

> A person who previously has been convicted of a felony who purchases, owns, possesses, or has under his custody or control any firearm shall be guilty of a felony and shall be imprisoned in the state prison for a period of time not to exceed five (5) years and by a fine not to exceed five thousand dollars ($5,000).

I.C. § 18-3316(1). As noted, Wilson admitted that he was in possession of the firearm, leaving only one remaining issue for trial: whether Wilson had previously been convicted of a felony.

This Court has not previously had occasion to discuss the type of proof required to show that a defendant has previously been convicted of a felony; however, the Idaho Court of Appeals has addressed this issue on several occasions. *See, e.g.*, *State v. Harris*, 160 Idaho 729, 378 P.3d 519 (Ct. App. 2016); *State v. Medrain*, 143 Idaho 329, 144 P.3d 34 (Ct. App. 2006). The Court of Appeals has held, in the analogous context of a persistent violator enhancement, that the State has the burden of proving "the identity of the defendant as the person formerly convicted [of a felony] beyond a reasonable doubt." *Medrain*, 143 Idaho at 332, 144 P.3d at 37. "The [S]tate also has the burden of identifying the prior crimes as felonies." *Harris*, 160 Idaho at 730, 378 P.3d at 520. To prove that the prior crimes were felonies, the State may produce "copies of judgments specifically identifying the crimes as felonies or, if the judgments were not so specific, by offering admissible copies of the felony statutes applicable to the crimes recited in the judgments." *Id.*

In order to prove a defendant's identity, the Court of Appeals has characterized certain types of evidence as either sufficient or insufficient to prove a defendant's identity:

> A certified judgment of conviction accompanied by mug shots, fingerprint cards and testimony that those fingerprints are similar to the defendant's fingerprints, constitutes sufficient evidence to establish identity for purposes of the persistent violator enhancement. [*State v. Martinez*, 102 Idaho 875, 880, 643 P.2d 555, 560 (1982)]. However, a certified copy of a judgment of conviction bearing the same name as the defendant, with nothing more, is insufficient to establish the identity of the person formerly convicted beyond a reasonable doubt. *Id.* Where a defendant is not sufficiently identified as the same individual who was previously convicted,

7

the judgment of conviction finding him or her to be a [convicted felon] must be vacated. *State v. Polson*, 92 Idaho 615, 622, 448 P.2d 229, 236 (1968).

*Id.*

A survey of the facts underlying this line of decisions is instructive. First, in *Medrain*, the State introduced two judgments of conviction listing "McGavin O. Medrain" as the defendant. *Id.* at 331, 144 P.3d at 36. The "only evidence connecting Medrain to the 'McGavin O. Medrain' listed in the judgments of conviction was the similarity between the two names." *Id.* at 332, 144 P.3d at 37. The Court of Appeals held that because the State produced no evidence of Medrain's date of birth or social security number, it had "failed to produce substantial evidence upon which a reasonable jury could have found that the [S]tate sustained its burden of proving Medrain" had been convicted of a felony. *Id.* at 333, 144 P.3d at 38.

Next, in *Harris*, the defendant was charged with attempted arson. The State also sought a persistent violator sentencing enhancement. 160 Idaho at 730, 378 P.3d at 520. To prove the persistent violator enhancement, the State introduced two judgments of conviction, but neither document indicated that the underlying crime was a felony. *Id.* The Court of Appeals was not persuaded that the State had met its burden in proving that Harris had been convicted of two prior felonies, holding a reasonable juror could not conclude as much based on the content of the two judgments of conviction alone, especially considering that neither judgment listed the underlying crime as a felony. *Id.* at 521, 378 P.3d at 731.

The Court of Appeals has also held that correlating evidence of a defendant's date of birth, social security number, or other identifying data is required to prove a prior felony conviction when the State merely presents evidence of a defendant's first and last name and geographical and age range data. *State v. Ish*, 161 Idaho 823, 826, 392 P.3d 1, 4 (Ct. App. 2014). In *Ish*, the State presented evidence of Ish's name and date of birth in order to establish that he had been convicted of a prior felony. *Id.* at 824, 392 P.3d at 2. The documents admitted into evidence were court minute entries; the first showed the name "Martin Edmo Ish" with a date of birth and the second identified a "Martin Ish," but contained no other identifying information. *Id.* The Court of Appeals held that the second minute entry was insufficient to meet the State's burden of proving that Ish had been convicted of a prior felony because it contained only a first and last name and no other personally identifying information. *Id.*

In another relevant case, the Court of Appeals held that evidence of a prior conviction bearing the same name, date of birth, offense, and county as the defendant in the present case was

sufficient to establish a defendant's previous conviction beyond a reasonable doubt. *State v. Lawyer*, 150 Idaho 170, 174, 244 P.3d 1256, 1260 (Ct. App. 2010). In *Lawyer*, the State sought to prove a felony DUI enhancement by presenting evidence of a judgment of conviction and an attached criminal complaint bearing the name "Daniel J. Lawyer" and a birth date. *Id.* at 169, 244 P.3d at 1259. The State also presented testimony from the arresting officer that the identifying data in the judgment of conviction matched the data on Lawyer's driver's license, which he viewed prior to arresting Lawyer for the instant offense. *Id.* The Court of Appeals noted that "a combination of personal and nonpersonally [sic] identifying evidence, when considered together, may at some point be sufficient to establish identity [of a defendant] beyond a reasonable doubt." *Id.* at 170, 244 P.3d at 1258. When viewing the totality of the evidence the State presented against Lawyer, including the fact that the prior conviction was for the same crime and in the same county as the present crime, the Court of Appeals held that the State had met its burden in proving that Lawyer had previously been convicted of felony DUI. *Id.*

In reaching its conclusion in *Lawyer*, the Court of Appeals summarized the conclusions reached by other jurisdictions when determining "what type of evidence is sufficient to allow a reasonable trier of fact to identify a defendant beyond a reasonable doubt." *Id.* at 173, 244 P.3d at 1259. First, the Court of Appeals noted a distinction between personally identifying data (name, birth date, social security number, photographs) and non-personally identifying data (offense type, geographical location), indicating that "proof of personally identifying facts is required." *Id.* The court noted that this could include fingerprints, booking photographs, testimony from law enforcement, as well as a defendant's sex, race, date of birth, and driver's license number. *Id.* at 173–174, 244 P.3d at 1259–60.

The approach taken by the Court of Appeals indicates that whether evidence is sufficient to prove that a defendant has been previously convicted of a felony is a factual determination to be made on a case-by-case basis. In this case, the State bore the burden of proving that Wilson had previously been convicted of a felony beyond a reasonable doubt in order to convict him of unlawful possession of a firearm. To do so, the State presented the testimony of Deputy Maydole. First, Maydole testified that he was "familiar" with Mark Charles Wilson because of both his employment at the Custer County Sheriff's Department and generally from the small community of Challis. Maydole testified that he was aware that Wilson had pleaded guilty to battery with

9

intent to commit a serious felony in 2006, even though he had no personal involvement in that case.

The evidence submitted by the State also included the Custer County judgment of conviction, which identified "Mark Charles Wilson," with a date of birth of 07/30/1964 and a social security number. The Michigan "Judgment of Sentence" was admitted as well, which showed that a "Mark Charles Wilson," with a birth date of 07/30/1964, was convicted of "Criminal Sexual Conduct, 2nd Degree." The State did not present any independent evidence of Wilson's social security number, nor did it admit any photographs of Wilson; however, Maydole testified to Wilson's birthdate and that it matched that birthdate shown on both judgments admitted by the State.

While the State certainly could have presented *more* evidence establishing Wilson's identity, we conclude that the testimony of Maydole and the Custer County judgment of conviction were sufficient to support the jury's finding that Wilson had been convicted of at least one prior felony, and therefore, unlawfully possessed a firearm. As a preliminary matter, the State did not meet its burden with respect to the Michigan conviction because the "Judgment of Sentence" did not independently confirm that it pertained to the same Mark Charles Wilson in the present case. More importantly, it did not identify that crime as a felony. Additionally, the State acknowledges that it did not present sufficient evidence of the Michigan conviction by only discussing the Custer County conviction in its Respondent's Brief. Accordingly, the State presented insufficient evidence that Wilson had previously been convicted of a felony in Michigan.

The Custer County conviction, on the other hand, identified Wilson's full name and birth date. The judgment also clearly listed that the underlying crime was a felony. As noted by the Court of Appeals, some combination of both personally and non-personally identifying information can be sufficient to prove a defendant's identity for purposes of a prior felony conviction. *Lawyer*, 150 Idaho at 174, 244 P.3d at 1260. Here, the personally identifying evidence included a full name and birth date that matched Wilson's. Maydole also testified that he knew Wilson from the community and that he had previously been convicted of a felony in Custer County in 2006. The non-personally identifying evidence included the fact that the prior conviction occurred in the same county as the present offense. This evidence was sufficient for a jury to conclude that Wilson had been convicted of at least one prior felony. Consequently, we affirm Wilson's conviction for unlawful possession of a firearm.

10

**B. Assuming without deciding that the district court erred by removing a material element from the jury's consideration, the district court corrected its presumed error by *sua sponte* granting Wilson a new trial; however, because Wilson declined a new trial by pleading guilty, we conclude he was appropriately subjected to the persistent violator sentencing enhancement.**

The bifurcated trial moved into its second phase after the jury convicted Wilson of unlawful possession of a firearm. The next question for the jury was whether Wilson had been previously convicted of *two* prior felonies in order to impose the persistent violator sentencing enhancement. Prior to submitting the case to the jury, the district court incorrectly ruled that whether the Michigan crime was a felony was a question of law to be decided by the district court, rather than the jury. The district court further concluded that the Michigan crime was a felony in 1990 based on its own research. Neither party submitted additional evidence. The jury answered "yes" when asked whether Wilson had been convicted of (1) Criminal Sexual Conduct, 2nd Degree and (2) Battery with Intent to Commit a Serious Felony.

Wilson moved for a judgment of acquittal on the persistent violator sentencing enhancement, which the district court denied.[2] The district court did, however, grant a new trial because it determined that the jury should have made the determination of whether the Michigan conviction was a felony based on the evidence presented by the State. No new trial took place because Wilson pleaded guilty to the persistent violator enhancement, reserving his right to appeal.

On appeal, Wilson again asserts that the State failed to meet its burden of proving beyond a reasonable doubt that Wilson had been convicted of two prior felonies. Even if the evidence was sufficient to show that Wilson had been convicted of two prior *crimes*, Wilson contends that the State failed to prove that both prior convictions, particularly the Michigan conviction, were *felonies*. Wilson points out that the State's copy of the Michigan Penal Code reflected the crime of criminal sexual conduct in the second degree as it appeared in 2019, as opposed to in 1990 when Wilson was purportedly convicted. Wilson also notes that the copy admitted by the State showed that the statute had been amended five times since 1990, and as such, the State should have presented the version of the statute that was in effect in 1990.

---

[2] We note that a judgment of acquittal is not the appropriate way to describe the relief sought by Wilson. A sentencing enhancement is not a separate charge. *State v. Passons*, 163 Idaho 643, 646, 417 P.3d 240, 243 (2018). Rather, it simply increases the potential sentence that may be imposed if the defendant has committed two felonies prior to being convicted of a third. *See id.*

In response, the State first asserts that Wilson has failed to preserve his argument that the State presented insufficient evidence that (1) he was the Mark Charles Wilson that committed criminal sexual conduct in Michigan in 1990 and (2) that the Michigan conviction was a felony. The State next argues that it presented sufficient evidence to support the jury's conclusion that Wilson had been convicted of both the Custer County offense and the Michigan offense. The State primarily relies on the same arguments it did in arguing that it presented sufficient evidence of the unlawful possession charge, pointing to the judgments of conviction admitted at trial, and contending that the jury could "infer" that Wilson was the same defendant listed in the Michigan conviction because the Custer County conviction had the same name and birthdate.

Next, the State argues that Wilson's argument should have focused on the jury instructions and verdict forms, which Wilson did not object to, rather than the sufficiency of the evidence. The State again attacks Wilson for "failing to preserve" this issue because he did not object to the instructions given during either phase of the bifurcated trial. The State continues its argument by alleging that the evidence the Michigan conviction was a felony was sufficient. The State argues that the jury "knew" that Wilson had been convicted by a Michigan jury, was sentenced to one year of incarceration, that the sentence had been suspended and he was only given two months' probation, and that "the criminal statute reflected in the judgment against Wilson criminalized very serious criminal conduct and made that conduct a felony." The State concludes its argument by asserting that there "is no reason at all to believe that the [Michigan] offense was a misdemeanor when Wilson was convicted of it."

Wilson responds, first arguing that his conditional guilty plea, which "reserve[ed] his right to appeal any and all decisions that the [district] court has made to this point," properly preserved his arguments on appeal. Specifically, Wilson contends that his motion for a judgment of acquittal, which the district court denied both orally and by written order, argued that the State failed to present sufficient evidence that both of Wilson's prior convictions were felonies.

Wilson next asserts that neither the jury instructions nor the verdict forms were objectionable; in fact, Wilson argues the State invited any error by arguing at trial that it did not need to present evidence that the Michigan conviction was a felony. Wilson clarifies that the appropriate remedy on appeal is a judgment of acquittal on the persistent violator charge.

Idaho Code section 19-2514 governs sentence enhancements for defendants who have been convicted of three felonies:

12

> Any person convicted for the third time of the commission of a felony, whether the previous convictions were had within the state of Idaho or were had outside the state of Idaho, shall be considered a persistent violator of law, and on such third conviction shall be sentenced to a term in the custody of the state board of correction which term shall be for not less than five (5) years and said term may extend to life.

I.C. § 19-2514.

At the outset, we conclude that Wilson has properly preserved the issues he raised on appeal. Wilson objected to the evidence admitted at trial and urged the district court to allow the jury to make the finding of whether the prior convictions were felonies. Further, Wilson moved for a judgment of acquittal (1) after the State rested in the first phase of the bifurcated trial, and (2) after the jury convicted Wilson of the persistent violator sentencing enhancement, both times alleging that the State failed to present sufficient evidence that the Michigan conviction was a felony. The record clearly reflects that Wilson properly preserved the issues on appeal.

Assuming without deciding that the district court erred in removing a factual determination from the jury's consideration—whether the Michigan crime was a felony in 1990—we nevertheless conclude that the district court acknowledged this presumed error and corrected it by vacating Wilson's persistent violator conviction and ordering a new trial. We need not determine whether the district court erred because Wilson was offered the opportunity for a new trial. However, Wilson specifically declined the remedy afforded him by the district court for its error by pleading guilty and reserving his right to appeal.

We also reject Wilson's invited error argument. The presumed error in Wilson's trial was generated by the district court, not the State. Although the State may have acquiesced in the error, it cannot be said that the State invited it. *See State v. Barr*, 166 Idaho 783, 786, 463 P.3d 1286, 1289 (2020) ("The invited error doctrine precludes a [party] from 'consciously' inviting district court action and then successfully claiming those actions are erroneous on appeal. . . . Simply acquiescing in the district court's stated conclusion [] is not enough to preclude [a party] from asserting his challenge to the sentence based on invited error.") (quoting *State v. Hall*, 163 Idaho 744, 771, 419 P.3d 1042, 1069 (2018)). Furthermore, the State is not now claiming on appeal that the district court erred in removing a factual determination from the province of the jury and is,

13

therefore, not seeking to benefit from this error; rather, the State was prepared to move forward with a new trial[3] until Wilson pleaded guilty.

Because Wilson declined the remedy granted by the district court, we decline to order a new trial as a result of his appeal. To do so would only afford him a remedy that was previously offered and rejected by Wilson. We also decline to reverse the judgment of the district court by granting Wilson an acquittal; the presumed error in the case was due to the trial judge withdrawing a necessary element of the State's proof from the jury. *See State v. Sherrod*, 131 Idaho 56, 60, 951 P.2d 1283, 1287 (Ct. App. 1998). The district court remedied its mistake *sua sponte* by affording Wilson a new trial. A new trial was the sole remedy available to Wilson. *Id.* Accordingly, we hold Wilson was appropriately subjected to the persistent violator sentencing enhancement.

## IV. CONCLUSION

For the reasons discussed above, we affirm the judgment of the district court.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.

---

[3] After the district court ordered a new trial, but before Wilson pleaded guilty, the State disclosed to Wilson in discovery several documents it intended to offer at the new trial, including a copy of the 1989 Michigan statute along with several booking photos from both Wilson's Idaho crimes and his Michigan crime.